[ Filed December 9, 1889. ]

### JOHN CORT, APPELLANT, *v.* LASSARD & LUCIFER, RESPONDENTS.

CONTRACT.—SPECIAL AND UNIQUE PERSONAL SERVICES.—WHEN EQUITY WILL EXERCISE ITS PREVENTIVE POWERS.—Where a contract stipulates for special, unique or extraordinary personal services, such as involves special merit, skill, knowledge, or ability, so that in case of default, the same services could not be easily obtained from others, nor be compensated in damages at law, a court of equity would be warranted in applying its preventive remedy by injunction; otherwise, if such service were ordinary and without special merit and such as could be easily supplied without much difficulty or expense, the principle is that contracts for such services are personal and peculiar, because of their special merit or unique character, and the inadequacy of the remedy at law to compensate in damages for their breach.

APPEAL from the circuit court for Multnomah county.

*Sears & Beach*, for Appellant.

*C. H. Hewitt*, for Respondents.

LORD, J.—This is a suit wherein the plaintiff, who is a theatrical manager, seeks to enjoin and prevent the defendants, who are acrobats, from performing at a rival theater in the same place. The plaintiff alleges, among

other things, that the plaintiff and defendants entered into a contract whereby it was agreed that the defendants were to perform as acrobats, exclusively for the plaintiff, during a period of six weeks, at a salary of $60 per week, etc.; that the plaintiff has performed all the conditions of his said contract, and gone to large expense in advertising, etc., and would have derived large emoluments from the performance of the defendants, which are alleged to be unique and attractive; that said defendants, after performing for the plaintiff for the space of three weeks, refused to perform longer, and engaged themselves to perform as acrobats at another theater mentioned, in said city; and that said performance of the said defendants will attract large crowds, etc., and will largely diminish, if permitted to be given, the receipts of the plaintiff, and cause an irreparable loss, etc., and diminish the attractions of his said theater, etc.; that the said defendants are entirely impecunious, and unable to respond to an action for a breach of the contract, etc.  The answer denies nearly all the material allegations, but admits the hiring, etc., and then avers affirmatively that the plaintiff failed to fulfill his part of the contract, etc., and that the plaintiff discharged them, etc.; all of which was put in issue by the reply.  Upon all the issues presented by the pleadings, the finding of the court was favorable to the plaintiff, with this exception: "That the performance of the said defendants was not of an unique or unusual character, but that of an ordinary acrobat and tumbler, which could have been easily supplied, with little or no delay or expense; and that said service was of a common and ordinary character, and not such as could be enjoined in equity for a breach of contract to perform," etc.  As a result, the court found, as a conclusion of law, that the plaintiff was not entitled to any relief in equity, and that his suit be dismissed.  The contention of counsel for the plaintiff is to this effect:  (1) That it is immaterial whether the performance is unique, or involves special knowledge or skill; and (2) that the finding is contrary to the evidence, which will

show that the performance was unique and unusual. In
this case, there is no negative clause in the contract; but
the suit, as decided by the court, assumes and admits that
such a stipulation is not a prerequisite to the exercise of
jurisdiction, but that it is enough to warrant equity to
interfere if the contract alleged to have been broken stip-
ulated for services which are unique and extraordinary in
their character, or which involve special skill or knowl-
edge or ability, and provided that such services were to
be rendered at a particular place or places, and for a
specified time.

The question whether a court of equity will apply the
preventive remedy of injunction to contracts for the ser-
vices of professional workers of special merit, or leave
them to the remedy at law for damages, has been the sub-
ject of much discussion, and the existence of the jurisdic-
tion fully established. It is not, perhaps, possible, nor is
it necessary, to reconcile the decisions; but the ground of
the jurisdiction, as now exerted, rests upon the inadequacy
of the legal remedy. In an early English case, where the
jurisdiction was invoked to prevent the actor Kean from
performing at another theater upon a contract for personal
services, at which there was a stipulation to the effect
that he should not perform at any other theater in Lon-
don during the period of his engagement, it was held, as
the court could not enforce the positive part of the con-
tract, it would not restrain by injunction a breach of the
negative part. *Kemble* v. *Kean,* 6 Sim. 333. But this case
was expressly overruled in *Lumley* v. *Wagner,* 1 De Gex,
M. & G. 604, upon a like contract for personal services, to
sing, during a certain period of time, at a particular
theater, and not to sing elsewhere without written author-
ity, upon the ground that the positive and negative
stipulations of such contract formed but one contract, and
that the court would interfere to prevent the violation of
the negative stipulation, although it could not enforce the
specific performance of the entire contract. In delivering
this opinion, among other things, the lord chancellor said:

"The agreement to sing for the plaintiff, during three months, at his theater, and during that time not to sing for anybody else, is not a correlative contract. It is, in effect, one contract; and though, beyond all doubt, this court could not interfere to enforce the specific performance of the whole of this contract, yet, in all sound construction, and according to the true spirit of the agreement, the engagement to perform for three months at one theater must necessarily exclude the right to perform at the same time at another theater. It was clearly intended that J. Wagner was to exert her vocal abilities to the utmost to aid the theater to which she agreed to attach herself. I am of opinion that if she had attempted, even in the absence of any negative stipulation, to perform at another theater, she would have broken the spirit and true meaning of the contract, as much as she would with reference to the contract into which she has actually entered." In *Montague* v. *Flockton*, L. R. 16 Eq. 189, it was held that an actor who enters into a contract to perform for a certain period at a particular theater may be restrained by injunction from performing at any other theater during the pendency of his engagement, notwithstanding that the contract contains no negative clause restricting the actor from performing elsewhere. Referring to *Lumley* v. *Wagner*, *supra*, the vice-chancellor said: "It happened that the contract did contain a negative stipulation, and, finding it there, Lord St. Leonard relied upon it; but I am satisfied that, if it had not been there, he would have come to the same conclusion, and granted the injunction on the grounds that Mdlle. Wagner, having agreed to perform at Mr. Lumley's theater, could not at the same time be permitted to perform at Mr. Gye's. But, however that may be, it is comparatively unimportant, because the subsequent authorities have completely settled this point." As a result of these English authorities, while conceding that specific performance of such contracts could not be enforced, the jurisdiction is established that relief may be granted on a contract for such

services, even though it contains no negative clause, upon the ground that a contract to act or play at a particular place for a specified time necessarily implies a prohibition against performing at any other place during that period. The American courts, while they recognize the existence of the jurisdiction, have exhibited much hesitancy in applying it to such enlarged uses.   Until *Daly* v. *Smith*, 49 How. Pr. 150, was decided, the doctrine of *Lumley* v. *Wagner*, *supra*, was either entirely rejected or only partially accepted.   *Sanquirico* v. *Benedetti*, 1 Barb. 315; *Hamblin* v. *Dinneford*, 2 Edw. Ch. 528; *Fredericks* v. *Mayer*, 13 How. Pr. 566; *Butler* v. *Galletti*, 21 How. Pr. 465; *Burton* v. *Marshall*, 4 Gill. 487; *Hayes* v. *Willio*, 11 Abb. Pr. (N. S.) 167.   In that case *(Daly* v. *Smith, supra)* the authorities are carefully discriminated, and the injunction was granted restraining an actress from violating her agreement to play at the plaintiff's theater for a stated period; and the case is on all fours with *Lumley* v. *Wagner*, *supra*.   See, also, *Hahn* v. *Society*, 42 Md. 465; *McCaull* v. *Braham*, 16 Fed. Rep. 37. In *Fredericks* v. *Mayer*, 13 How. Pr. 567, and *Butler* v. *Galletti*, 21 How. Pr. 466, the court indicates the principle that where the services involve the exercise of powers of the mind, as of writers or performers, which are purely and largely intellectual, they may form a class in which the court will interfere, upon the ground that they are individual and peculiar.

In these cases the element of mind furnishes the rule of distinction and decision, as distinguished from what is mechanical and material, and would exclude professional workers, such as dancers and acrobats, whose performances are largely mechanical, however unique or extraordinary such performance may be.   But it is apprehended that this distinction cannot be maintained, for the fact is that such actors do often possess special merit of extraordinary qualifications in their line, which makes their professional performances distinctly personal and peculiar; and that, in case of their default on a contract for services, there would be the same difficulty in supplying their places, or

XVIII. OR.—15.

in obtaining from others the same service, as would happen with actors, whose merits were largely intellectual, showing the same reason to exist as much in the one case as the other for the application of the preventive remedy by injunction. Relative to this subject, the authorities indicate that the American courts have refused to interfere, unless there was a negative clause forbidding the services sought to be enjoined. Such a stipulation existed in the contract in *Daly* v. *Smith, supra,* upon which relief was granted, although the opinion is broad enough to include contracts without such stipulations, when the facts show that the contract is reasonable, the complainant without fault, and that he has no adequate remedy at law. To my mind, this is the correct principle to apply to such cases, even though the contract contains no negative stipulation; for, in the nature of things, a contract to act at a particular theater for a specified time necessarily implies a negative against acting at any other theater during that time. The agreement to perform at a particular theater for a particular time, of necessity involves an agreement not to perform at any other during that time. According to the true spirit of such an agreement, the implication precluding the defendant from acting at any other theater during the period for which he has agreed to act for the plaintiff follows as inevitably and logically as if it was expressed. So that according to all the authorities, where one contracts to render personal service to another which requires special merit or qualifications in the professional worker, and, in case of default, the same service is not easily obtained from others, although the court will not interfere to enforce the specific performance of the whole contract, yet it will exert its preventive power to restrain its breach. While it is true that the court cannot enforce the affirmative part of such contract, and compel the defendant to act or perform, it can enjoin its breach, and compel him to abstain from acting elsewhere than at the plaintiff's theater. The principle upon which this doctrine rests is that contracts for such services are individual and peculiar, because

of their special merit or unique character, and the inadequacy of the remedy at law to compensate for their breach in damages. "Where," says Prof. Pomeroy, "a contract stipulates for a special, unique or extraordinary personal service or acts, or for such services or acts to be rendered or done by a person having special, unique and extraordinary qualifications, as, for example, by an eminent actor. singer, artist, and the like, it is plain that the remedy at law of damages for its breach might be wholly inadequate, since no amount of money recovered by the plaintiff might enable him to obtain the same, or the same kind of services or acts elsewhere, or by employing any other person." Pom. Eq. Jur. § 1343. Damages for a breach of such contracts are not only difficult to ascertain, but cannot, with any certainty, be estimated; nor could the plaintiff procure. by means of any damages, the same services in the labor market, as in case of an ordinary contract of employment between an artisan, a laborer, or a clerk, and their employer.

It results, then, that if the services contracted for by the plaintiff to be rendered by the defendants were unique or extraordinary, involving such special merit or qualifications in them as to make such services distinctly personal and peculiar, so that in case of a default by them, the same or like services could not be easily procured, nor be compensated in damages, the court would be warranted in applying its preventive jurisdiction and granting relief; but otherwise, or denied, if such services were ordinary. and without special merit, and such as could be readily supplied or obtained from others without much difficulty or expense. But the present case is far from being one of such character a·· falls under the principle of the authori·ties in which the preventive remedy by injunction has been allowed. There is absolutely nothing in the evidence to show that the performances of the defendants were unique or of any special merit. The plaintiff himself will not even admit that they are ; while others say the performances were "great," "pretty good," "do a fair act,"

etc.; and others, that their performances were merely that of the ordinary acrobat, and that there would be no trouble in supplying their places, or, as one of a good deal of professional experience says, "in getting a thousand to do just as good variety business."

Indeed, according to our view of the evidence, the plaintiff fails to make a case within the principle in which equity allows relief for a breach of contract for personal services, and the court below committed no error in dismissing the bill.