[No. 274. Decided December 10, 1891.]

THE TACOMA HOTEL COMPANY, *Respondent*, v. TACOMA LIGHT AND WATER COMPANY, *Appellant*.

#### CORPORATIONS—WATER COMPANY—REGULATIONS.

A rule of a water company requiring payment of a sum due under a contract for water as a condition precedent to its continuing to supply water to the party in arrears, is a reasonable one, and binding upon all parties with actual notice thereof.

*Appeal from Superior Court, Pierce County.*

The facts in the case are stated in the opinion.

*Galusha Parsons*, for appellant.

*W. Lair Hill*, and *Thad. Huston*, for respondent.

The opinion of the court was delivered by

SCOTT, J.—The appellant is the owner by assignment of a grant and franchise by ordinance of the city of Tacoma, granting to John W. Sprague, his associates and assigns, "the right and privilege of supplying the city of Tacoma, and the inhabitants thereof, with pure and fresh water, for which they shall be and are hereby authorized to charge the consumers thereof reasonable rates." The appellant, operating under said grant, supplied to the premises of respondent water for and during the three months ending October 1, 1890, for which supply it demanded the sum of $478.10, which the respondent refused to pay. The appellant added a penalty to said sum, increasing the sum to $502, and again demanded payment, and upon the continued refusal of the respondent to pay, appellant threatened to shut off and stop supplying the water for respondent's premises; whereupon respondent brought this suit to enjoin the appellant from so doing.

The complaint sets forth the corporate character of the

parties to the action, the plaintiff's ownership of the premises described; that the building thereon is a large and expensive hotel, and that "the use of the water furnished by the defendant is absolutely necessary to the use and occupancy of said hotel for the purposes for which it was constructed;" the demand of the sum of $502 claimed; an allegation that said charge is unreasonable, excessive and unlawful; an allegation that the plaintiff is and at all times was ready and willing to pay a reasonable sum, and alleging the purpose of the defendant to shut off the water and deprive plaintiff of its use, thereby causing the plaintiff great and irreparable injury, etc. The answer denies that the charge is unreasonable, excessive or unlawful; denies the readiness of the plaintiff to pay a reasonable sum; admits that it was and is defendant's purpose to deprive the plaintiff of the use of its water for said hotel and premises until it should pay the reasonable charges of defendant for the water furnished it for the quarter ending on the first day of October, 1890; denies that it would cause the plaintiff great and irreparable injury, etc.; and contains an affirmative defense wherein the corporate capacity of the defendant is set forth; also its ownership of the water franchise, and its rights and authority thereunder. It also contains the following allegations:

"4. That for the transaction of the business for which it was incorporated, and to enable it to furnish water as in said ordinance provided, to the said city of Tacoma and its inhabitants, at reasonable rates, it adopted, among others, a rule in the words following, to wit: 'Sec. 19. Water rents will be due and payable quarterly on the first days of January, April, July and October. In case of non-payment of rents within ten days after they are due, five per cent. additional will be added, and if the rents are not paid within fifteen days after they are due the water will be shut off from the premises, as provided for in sections 20 and 21.'

"5. That to secure compliance with said rules, without which the proper management of the business of said com-

pany would have been wholly impracticable, it adopted a further rule as follows: 'Sec. 20. On failure to comply with the rules and regulations established as a condition to the use of water, or to pay the water rents in the time and manner hereinbefore provided, the water may be shut off until payment is made of the amount due,_with fifty cents in addition for the expense of turning the water off and on.'

"6. That said rules were made a part of the contract with all persons applying to be furnished with water by this defendant.

"7. That prior to the 6th day of May, 1890, this defendant established the following rates as the rates to be paid by persons desiring that they should be supplied with water by meter, to wit:

Meter rates, from  1,000  to  50,000 gallons per month, per 1,000 gallons .................................................................................... $0.25
Meter rates, from 50,000 to 100,000 gallons  per month, per 1,000 gallons .................................................................................... .20
Meter  rates,  all  over  100,000  gallons  per  month,  per  1,000 gallons ........................................................................... .15

That said rates were reasonable, and far below the rates usually charged by water companies in the United States. That the said rates so charged were well known to the directors and managing officers of this plaintiff. That, well knowing the rates of charges of this defendant for water furnished by measurement to the inhabitants of said city, plaintiff applied in writing to this defendant to furnish water for the use of the said hotel, and thereupon agreed to comply with the rules and regulations of this defendant in respect thereto; and that in default thereof, or of prompt payment at the rates so established, or of a failure to comply with the said rules and regulations, the water might be turned off from the premises so supplied, and discontinued until the bills for water furnished previously thereto should have been paid.

"8.   That in pursuance of said request, and in accordance with its rules and regulations, defendant furnished water for the use of said hotel for the months of July, August and September, 1890, to the amount of 4,780,500 gallons.   That at the established rate when said water was so furnished, to wit, at the rate of fifteen cents for 1,000 gallons, it would have amounted to the sum of seven hun-

dred and seventeen and 12-100 dollars ($717.12), which sum would have been a reasonable and just charge therefor.

"9. That, nevertheless, said defendant having, after the making of said application, reduced its charges below the established rates therefor, as they then existed, to consumer whose consumption should exceed 200,000 gallons per month, to wit, to the sum of ten cents per thousand gallons, it voluntarily, and without having agreed so to do, reduced the rate of charges to this plaintiff from fifteen cents to ten cents per thousand gallons. The defendant presented to plaintiff its said bill for four hundred and seventy-eight and 10-100 dollars ($478.10), and plaintiff, having wholly neglected and refused, for fifteen days after the same became due, to pay for the water so consumed by it, and as provided by the said rules, this defendant, in accordance with its rules and regulations, to wit, with said rule nineteen, added to the said bill the sum of five per cent. (5) of the amount thereof, and presented to this plaintiff a bill therefor, to wit, for the sum of five hundred and two dollars ($502), as stated in said complaint, which sum still remains wholly unpaid.

"11. And this defendant further says that it has at all times been, and is now, ready and willing to furnish to the said plaintiff all the water that it may require or demand for its use, at reasonable rates, and below the rates usually charged by water companies elsewhere for the like service, to wit: If the same exceed 200,000 gallons per month, at the rate of ten cents per thousand gallons, upon condition that the plaintiff pay for the same as provided by the established and published rules of this defendant, and that it conform to such rules; all of which the said plaintiff, in writing, at the time of its application to be supplied with water, agreed to do."

The plaintiff demurred to the answer on the ground that it did not state facts sufficient to constitute a defense. The court sustained the demurrer, and upon the refusal of the defendant to plead further, rendered a judgment and decree for the plaintiff.

The controversy is over the reasonableness of the rules and the rate charged, and as to whether appellant had a

right to stop supplying the water upon the refusal of respondent to pay the sum in arrear. It is contended by appellant that the demurrer admits, not only that the rules were reasonable, but that it was impracticable for appellant to carry on its business without the rules which the answer alleges it had adopted, and that the defendant, at the time of its application, knew what the rules were and agreed to be bound by them, and that it is likewise admitted that the rate charged was reasonable. The respondent claims there is no admission that it agreed to comply with the rules and regulations of appellant, and, quoting from paragraph seven aforesaid of the answer, says:

"This is really the only attempt at an affirmative allegation in the answer, and is very ingeniously pleaded. Much stress is laid upon it by counsel for appellant. It is argued that because respondent made an application in writing to be furnished with water on its premises, that it 'thereupon,' by inference or implication, agreed to comply with the rules and regulations of appellant, whatever they might be, reasonable or unreasonable, and that, therefore, appellant has a right to shut the water off and deprive respondent of the use thereof, regardless of consequences, simply to enforce the payment of a disputed claim and penalty. This pretended right respondent disputes, and the demurrer does not admit it."

It contends that the actual issue raised by the pleadings is whether the appellant has a legal right to enforce, or attempt to enforce, the payment of a sum claimed by it to be due, which includes a penalty of five per cent. for non-payment for water furnished by it to respondent, by shutting off the water connections with respondent's premises and depriving it of the use of water furnished by appellant under its franchise; that said franchise confers upon appellant valuable rights and privileges, and while it is not an exclusive grant by the terms of its charter, that it is so practically. That those rights and privileges are granted

by the public, and in consideration therefor it owes something to the public, viz.: The "supplying the city of Tacoma and the inhabitants thereof with pure and fresh water, for which they shall be and are hereby authorized to charge the consumers thereof reasonable rates." That no power is conferred in any way upon appellants to arbitrarily establish a rate or charge which the public should be compelled to accept as reasonable. Nor is the appellant in any way given any power, right or privilege to proceed to the enforcement of the payment of any sum it may claim to be due it in any other way than that possessed by any other individual or corporation—that is, through the courts, under the forms of law. The respondent further contends that the rules, as well as the rate charged, are unreasonable; that the pleadings disclose a dispute between the parties thereupon, and that the respondent has a right to have these matters determined by the courts in the usual way. And contends further, that the answer of appellant is bad on demurrer, because it admits the purpose of appellant to shut off and deprive the respondent of the use of said water on its said hotel premises, which use, the complaint alleges, is absolutely necessary to enable it to conduct its hotel business.

Some of the matters so contended for by respondent, it seems to us, are not involved in the case in its present aspect. The appellant corporation has been expressly granted the right to supply the city of Tacoma, and its inhabitants, with pure and fresh water, with the right to lay pipes, etc., in the public streets and alleys, for the purpose of carrying the same into effect. Its business is such as is usually carried on by the public, or associated capital, and it is dependent upon the needs of the people in its immediate vicinity for its profit. Its relations to the people, and the rights and privileges it must from the very nature of its business necessarily exercise, give it a public character,

21—3 WASH.

and to some extent a monopoly, which it is true can only be tolerated upon the ground of a reciprocal duty to meet the public want. Its duty is to supply the inhabitants of Tacoma within the extent of its business, who may apply to it therefor, with water for a reasonable price, and upon reasonable conditions. This it can be compelled to do, and respondent is right in its contention that appellant cannot arbitrarily establish prices which must be paid, and conditions which must be submitted to by the inhabitants of that city, without any regard as to whether such prices and conditions are reasonable or necessary. But, as we view the case, this question is not now before us. It does not appear that the city has undertaken in any way to fix prices, or lay down rules to govern appellant's business, and whatever rights the city may have in this respect we are not called upon to consider; but certainly, in the absence of any such attempt upon the part of the city, appellant has a right to establish prices to be paid, reasonable in amount, and to make all needful rules for the management and regulation of its business, and under such circumstances, at least, whenever a contest arises over them, these will be questions for the courts to determine. But the answer in this case alleges that the rate of prices established is a reasonable one, and under the familiar rule of pleading that a demurrer admits everything which is well pleaded, this fact, under the present aspect of the case, is settled. So, also, is the fact of the indebtedness for the water previously furnished likewise admitted. We wish this understood as limited to the sum first demanded. The power of the water company to impose an additional sum by way of penalty in case of non-payment stands upon a different footing from that of the power to establish the price in the first instance, not being dependent upon any facts as to the costs and expenses of supplying the water and carrying on its business, and a reasonable profit thereon. As to whether

the penalty could be sustained might be regarded as a question of law for us to determine as to its being authorized, or a reasonable charge, did we find it necessary for us to pass upon it in the disposition of the case, unless it should be sustained upon the ground that it was a part of the original price, which the respondent contracted and agreed to pay in case of the contingency arising. But, in any event, it stands admitted that the rate fixed is reasonable, that the respondent used the water for a time specified, and that it is indebted to the appellant therefor in the sum first demanded, and there is no claim that it has ever tendered any sum. The allegation in the complaint of a readiness and willingness to pay does not amount to this, even if it could be considered.

Now, then, could the water company refuse to supply the hotel company with water any longer unless it would pay the sum already due? Whether the contract between the parties was for a specified time not yet expired, or was a continuing one, is not apparent, and it does not matter, for it is admitted that the sum stated was due under the contract, whatever it was. There was no new application for water subsequent to the one under which the water up to October 1, 1890, had been furnished, and we are of the opinion that the water company had the right to require the payment of the sum so due as a condition precedent to its continuing to supply the hotel company with water under the general rule it had previously established, and it is not necessary to discuss the question whether the reasonableness or necessity of this rule is admitted by the pleadings, for we find as a matter of law that it is reasonable. Nor are we required to find whether it stands admitted by the pleadings that the hotel company contracted in writing in its application for water to be bound by the water company's rules, for it was bound in any event by the reasonable rules of the water company of which it had actual

notice.  And it did have notice of this rule, at least when payment was demanded, and it is not claimed that the hotel company made any attempt to comply therewith, nor that it was not given a reasonable time therefor.  We do not decide that the water company could not refuse to furnish water until the sum due had been paid, whatever the facts may have been as to the contract, or in case of a new application, unless, perchance, the contract provided otherwise, or a new contract should be entered into ignoring the sum due.

In *Williams v. Mutual Gas Co.*, 52 Mich. 499 (50 Am. Rep. 266), it is held that the gas company had the right to demand a deposit of money in advance, by way of security, before it could be compelled to furnish gas.  In that case the applicant had been using about sixty dollars worth of gas per week, and its requirements were increasing, and the court sustained a demand for a deposit of $100.  Seventy-five dollars had been tendered therefor. In *Shepard v. Milwaukee Gas Light Co.*, 6 Wis. 536, the court says:

" The third rule of the company, allowing the company to demand security for the gas consumed, or a deposit of money to secure payment thereof, appears to be just and necessary to guard against loss.  As the delivery of the gas is necessarily its consumption, and as the amount delivered is ascertained by the amount consumed, it would seem to be just and right that the company should not be compelled to furnish it without reasonable security for payment, in convenient amounts and at proper periods."

In *People v. Manha'tan Gas Light Co.*, 45 Barb. 136, it is held that the company may shut off the supply of gas until it has been paid the amount due for gas previously furnished.  And these authorities apply as well to a water company as to a gas company, although water is a necessary of life.  So far as its use is required as a necessity of life, if a case could possibly arise where

TACOMA HOTEL CO. v. TACOMA L. & W. CO.     325

Dec. 1891.]          Opinion of the Court—Scott. J.

an applicant could not get water otherwise, there, or go elsewhere to get it, it would be the duty of the public authorities to furnish it to him at the public expense. In *Girard Life Ins. Co. v. Philadelphia*, 88 Pa. St. 394, it is said that the supplying of water and gas is not a municipal duty:

"Hence, when the city undertakes to do so, it acts not by virtue of any rights of sovereignty, but exercises merely the functions of a private corporation. *Western S. F. Society v. Philadelphia*, 31 Pa. St. 175; 72 Am. Dec. 730 *Wheeler v. Philadelphia*, 77 Pa. St. 338. The introduction of water by the city into private houses is not on the footing of a contract, but of a license which is paid for. *Smith v. Phi*¹*adelphia*, 81 Pa. St. 38; 22 Am. Rep. 731. It may very well be that when a license has been given by the city to the owner of a house to use the water, such license may not be withdrawn arbitrarily, or from mere caprice. But it is equally clear that the city may adopt such rules in regard to the use of the water and the payment therefor as the municipal authorities shall deem expedient."

And it was held in that case, where the ownership of the premises had changed, and where payment for the water furnished for one year immediately preceding the purchase had been tendered by the new owner, it being conceded that this was a proper charge under the city ordinance, that the city could not be compelled to furnish water for the premises aforesaid unless the applicant would pay the sum in arrears for water furnished during three years preceding the change of ownership, with certain penalties thereunto added, although the city had neglected to take any steps according to the terms of the ordinance to collect the sums so due for the previous years. As to the authority of such companies to establish reasonable rules, see 1 Morawetz on Corporations, § 501; 1 Waterman on Law of Corporations, § 77.

The condition imposed, that the company might refuse to furnish water to an applicant refusing to pay for it a sum due for water furnished thereunder, is in one sense a

security for the payment thereof.    Instead of forming an estimate of the water that would likely be used, and requiring a deposit in advance of a sufficient sum of money to cover the same, or requiring other security for the payment thereof, the water company provides that at stated periods payments shall be made in order that a large sum may not accumulate, it being willing to take its chances for a stated time without other security; surely this is more lenient than either to demand a bond or other security, or a deposit of a sum of money in advance large enough to be reasonably certain of covering the sum that should become due.

Under the view we have taken of the state of the case, the authorities cited by respondent going to cases where an issue has been raised over the amount due are not applicable.    Of course the respondent has the right to contest the fact of the indebtedness, and of the reasonableness of the rate, unless it has agreed to pay according to such rate, and even in that case should it appear that it was compelled to make such an agreement in order to obtain the immediate necessary use of the water.

Appellant makes the point that the demurrer to the answer could not be sustained in any event, whatever the court might hold upon the other questions, because the demurrer goes to the whole answer, and as the first part of it only denies, and tenders an issue upon the allegations of the complaint, it is unquestionably good; consequently the demurrer should only have been directed to the new matter; otherwise the answer raising an issue as to the allegations contained in the complaint, the demurrer must be overruled.    While we think this point is well taken, we have considered the real merits in the other questions raised as they appeared to us.

Reversed and remanded.

ANDERS, C. J., and HOYT and STILES, JJ., concur.

DUNBAR, J., concurs in the result.