LOUIS KASTER V. HENRY C. MASON AND JULIA D. MASON.

Opinion filed May 9, 1904.

**Specific Performance — Consideration — Mutual Assent.**

1. Equity will not decree specific performance of a writing which lacks two essential elements of a contract, viz., consideration, and mutual assent of the signers to all the terms of the writing.

**Contract — Compelling Signature — Reformation of Writing.**

2. Where a writing, as a whole, does not purport to be a contract between two or more persons, but recites a dealing of the signer with himself, the court, on parol proof, will not require the owners of the land described in the writing to sign the same, and then decree a specific performance of the writing as reformed.

Appeal from District Court, Sargent county; *Lauder,* J.

Action by Louis Kaster against Henry C. Mason and Julia D. Mason. Judgment for defendants and plaintiff appeals.

Affirmed.

*J. E. Bishop* and *A. B. Kaercher,* for appellant.

Burden of showing lack of consideration lies with him who assails the instrument; the recital of a consideration therein is prima facie evidence of its existence. Rev. Codes 1899, sections 3880, 3881; 6 Am. & Eng. Enc. of Law, 765; want of consideration must be pleaded. 4 Enc. Pl. & Pr. 746.

Want of consideration not being pleaded, no proof could be offered by respondent, nor could he avail himself of evidence disclosed by appellant on this point. Cardoze v. Swift, 113 Mass. 250; Illstad v. Anderson, 2 N. D. 167, 49 N. W. 659; Atchison & N. R. Co. v. Miller, 21 N. W. 451.

Inadequacy of consideration is no defense unless so gross as to amount to conclusive evidence of fraud. 22 Am. & Eng. Enc. of Law (1st Ed.) 1031; 14 Id. (2nd Ed.) 516.

Silence without excuse or explanation will amount to ratification. 1 Am. & Eng. Enc. of Law (2nd Ed.) 1203.

Where an agent executes for his principal a written contract for the sale of land, and the latter ratifies it with full knowledge of its terms, such ratification renders the contract as valid as if the agent was previously employed in writing. Townsend v. Kennedy, 60 N. W. (S. D.) 164.

Suit for specific performance is of exclusive equity jurisdiction, regardless of absence or inadequacy of legal remedy. Suitor has his choice of remedies. 6 Ballards' Law of Real Property, section 838; 22 Am. & Eng. Enc. of Law (1st Ed.) 914. Equity assumes jurisdiction over all manner of rights and interests connected with real estate. 22 Am. & Eng. Enc. of Law (1st Ed.) 941, also 912-13. 6 Bullard's Law of Real Property, 831. Refusal to execute contract makes tender and demand unnecessary. McPherson v. Fargo, 74 N. W. 1057; Bullard's Law of Real Property, 692

Statute of frauds must be pleaded, or it is not available as a defense. 9 Enc. Pl. & Pr. 713. If one refuses a deed on account of defective title, he may still enforce the contract. Oliver Min. Co. v. Clark, 71 N. W. 908.

*E. W. Bowen* and *Chas. E. Wolfe*, for respondents.

Respondents never signed Exhibit "A." The signatures are a forgery. If such contract were signed, it is without consideration. A contract to be specifically performed must be upon a valuable consideration. 3 Pom. Eq. Jur. 1405.

Lack of consideration was pleaded. Consideration was alleged in complaint and denied in the answer. The denial was general; respondents could not plead affirmatively a lack of consideration in an instrument that they claim they never signed or approved.

The plaintiff has adequate remedy at law. The contract, if it existed and is valid, provides for $100 damages, as fixed by appellant.

There must be mutual assent both in law and equity. If there was no consensus, it is immaterial what was written.

COCHRANE, J. Plaintiff sued for the specific enforcement of the following writing known and identified as "Exhibit A," to wit:

"Earnest Money Contract of Sale. Cogswell, North Dakota, January 27, 1902. Received by Louis Kaster One Hundred ($100) Dollars as earnest money and in part payment for the purchase of the following described property situated in the county of Sargent and State of North Dakota, viz: Southwest ¼ of Section 18, Township 131, Range 56, and the East ½ of Southeast ¼, Section 13, Township 131, Range 57, which we have this day, through Frankson & Kavanaugh, our authorized agents, sold and agreed to convey to said Louis Kaster for the sum of two thousand eight hundred and eighty ($2,880) Dollars, on terms as follows, viz: $100

in hand paid as above, and $2,780, March 27, 1902, less mortgage that is now on the place of $640, payable on or before the dates first named above, or as soon thereafter as a warranty deed conveying a good title to such land is tendered, time being considered of the essence of this contract and this sale subject to the approval of Thomas Frankson, of Spring Valley, Minnesota,—$20 less for expenses. And it is agreed that if the title to said premises is not good, and cannot be made good within sixty days from date hereof, this agreement shall be void and the above $100 refunded. But if the title to said premises is now good in grantors named, and warranty deed tendered within sixty days and the said purchaser refuses to accept the same, said $100 shall be forfeited to the said Frankson & Kavanaugh; but it is agreed and understood by all parties to this agreement that said forfeiture shall in no way affect the rights of either party to enforce the specific performance of this contract. "Louis Kaster. [Seal.]
"By Kavanaugh, Agent.

"I hereby agree to purchase the said property for the price and upon the terms above mentioned, and also agree to the conditions of forfeiture and all conditions therein expressed.
Louis Kaster. [Seal.]

"We the undersigned owners of the above described land, do hereby ratify the above sale and agreements.
"Mrs. Julia D. Mason. [Seal.]
"Henry C. Mason.

"Witness:

"Wm. Kavanaugh."

Upon a trial to the court without a jury, judgment went for the defendants. The case is before us for trial anew, pursuant to section 5630, Rev. Codes 1899.

William Kavanaugh, one of the firm of Frankson & Kavanaugh, ascertained that defendants offered their farm for sale at $10 per acre. On the same day, January 27, 1902, without any authority whatever from the defendants to act for them, and without their knowledge or consent, Kavanaugh exhibited the land in controversy to Kaster, the plaintiff, and then prepared and procured the signature of the plaintiff to the foregoing writing, above the words "By Kavanaugh, Agent," and also after the clause following the above words. Kaster paid to Kavanaugh $100 at the time he signed the

paper. On the following day Kavanaugh went to the defendants' farm with his writing in his pocket. Without informing defendants of his deal with Kaster, he negotiated with them for, and secured from them, a written option to purchase their farm, whereby, for $50 then paid, they agreed that Frankson & Kavanaugh should, for 14 days after said January 28th, have the option of purchasing the described lands for $2,400 in cash, less a mortgage on the farm of $640, Frankson & Kavanaugh to signify their intention to take or reject the land by notice in writing within 14 days. If the notice of their intention to purchase was not served within 14 days, all rights of Frankson & Kavanaugh under the contract were to ipso facto cease, and if the notice of intention to purchase was served within 14 days, then they were to have 60 days further in which to examine abstract, make deeds, and close deal. After this option was agreed upon and written, it was signed by each of the defendants and delivered by them to Kavanaugh, and at their request a copy of it was made by Kavanaugh and given to them. After this matter was fully closed and Kavanaugh had secured the option contract,. he told defendants that he had already sold their land to another, and, upon Mr. Mason's saying that was all right, Kavanaugh testified that he produced Exhibit A, read it to the defendants, and asked them to sign their names to the clause, "We, the undersigned, owners of the above described land, do hereby ratify the above sale and agreements," and that they each affixed their names thereto in his presence. Defendants admit that Kavanaugh told them, after he had secured the written option, that he had sold the land, and that he read to them what he represented to be the contract of sale, but that they were not asked to, or did they in fact, sign the same; that they did not read Exhibit A, and knew nothing of its contents excepting as read to them by Kavanaugh.

The trial judge made the following findings of fact, which are challenged by appellant, viz.: "That the signatures of the defendants at the bottom of said contract, Exhibit A, are the genuine signatures of said defendants, but that they neither knew they were signing the said contract, nor assented thereto by such signatures, but that their signatures thereto were procured without their knowledge that they were signing said contract, and without their assent thereto." Also, "That the defendants received no part of the money consideration named in Exhibit A, and that there was in fact no consideration for the execution of said instrument passing from the

plaintiff to the defendants." And the court found as a conclusion of law that the writing, Exhibit A, declared upon in the complaint, was not the contract of defendants, because lacking their assent thereto, and it was not such a contract as in equity and good conscience ought to be decreed to be specifically performed by the defendants. The evidence sustains these findings and this conclusion. However their names were secured to Exhibit A (and the evidence is not clear upon this point), it is clear that the defendants did not sign the same intending to assume, or understanding that they thereby assumed, contract relations with Kaster. Defendants understood at all times that they were dealing with Frankson & Kavanaugh, and at no time considered that they were either bound or benefited by the Kaster deal, which they looked upon as an independent arrangement between Frankson & Kavanaugh and the plaintiff, entirely ancillary and subject to the rights of Frankson & Kavanaugh under the option contract. Frankson & Kavanaugh did not give the notice of election to purchase the land, as stipulated in the option contract, and forfeited all rights thereunder. The minds of the parties never having met upon its terms, Exhibit A never became a contract. Section 3856, Rev. Codes 1899; 3 Pom. Eq. section 1293; Pom. Spec. Per., section 58; 28 Enc. L. 21, and note But the writing upon which plaintiff bases his right of recovery, in the form in which it was before the signatures of defendants were attached, was not a contract, and did not on its face purport to be a contract—it lacked the parties. The names of the defendants were neither recited in it nor signed to it. It did not purport to be made by any one in their name or behalf. It recited a transaction of Kaster with himself. It was like the writing sued upon in Canterberry v. Miller, 76 Ill. 355, which the court held was not an enforceable contract. When defendants signed the paragraph: "We, * * * do hereby ratify the above sale and agreements," they did not, by signing, supply the wanting parties and make this their contract, because the writing above did not constitute a sale or agreement, and their ratification of Kaster's promise to buy from himself the described lands and to pay himself the specified sum therefor did not convert this into a promise on the part of defendants to sell their land to Kaster at the price named.

Plaintiff, in his complaint, alleges: "That in the execution of said contract on the part of defendants by their agents, Frankson & Kavanaugh, the said Kavanaugh, who acted for said agents in the

signing of said contract for defendants, by reason of inadvertence and oversight failed to attach to said contract, in a blank space left therein, the names of said defendants, but he, by inadvertence and oversight, placed in said blank space the name of the plaintiff, Louis Kaster." Plaintiff asks that the contract be reformed by adding the signatures of Henry C. Mason and Julia D. Mason, and specifically enforced after being so reformed. The evidence does not show this averment to be true, but disproves it in this: Kavanaugh did not sign Kaster's name to the writing. The signatures are Kaster's own, and, as already stated, Frankson & Kavanaugh were not, either by appointment or ratification, the agents of defendants, and had no authority at any time to represent them in any way. An all-sufficient answer to this request for reformation of the writing was given in Kulberg v. Georgia, 10 N. D. 463, 88 N. W. 88, that "a court of equity will not compel parties to sign contracts and then decree specific performance of them." Had Frankson & Kavanaugh signed defendants' names to this writing by themselves as agents, assuming an authority which they did not in fact possess, it would have been competent for defendants subsequently, with full knowledge of the facts, to ratify the act, or to adopt it as their own, and thus become bound. Clough v. Clough, 73 Me. 487, 40 Am. Rep. 386; Town v. Cooper (Conn.) 30 Atl. 760. But the writing in suit did not purport to be signed by defendants, or by any one as their agents, so there was nothing for them to ratify. They did not in fact ratify or adopt it.

The judgment appealed from is affirmed. All concur.
(99 N. W. 1083.)