## GREAT NORTHERN RAILWAY COMPANY, a Corporation, v. SHEYENNE TELEPHONE COMPANY, a Corporation.

### (145 N. W. 1062.)

Plaintiff asks that the defendant telephone company be enjoined from removing its 'phones and discontinuing service in four railway depots of McVille, Pekin, Warwick, and Tolna, wherein telephones had been installed in 1909 under written contracts providing that, for the privilege of placing them in the depots, telephone service should be free to the railway company. The term of the McVille and Pekin contracts was for five years, with no right of cancelation to either party until after that time, when either could cancel on thirty days' notice. The contracts as to Warwick and Tolna provided that the telephone company should furnish free service for as long as it should maintain an exchange in those towns, and stipulated against the right of cancelation of the contract or the removal of the 'phones by the telephone company; while the railway company reserved the right to at any time, on thirty days' notice, order the 'phones out and service discontinued. Chapter 252, Session Laws of 1911, requires railway companies to install and maintain telephone service in their depots for the benefit of their patrons, with fine to be imposed for noncompliance, after the enactment of which the telephone company notified the railway company that free telephone service would be furnished it no longer, and that the contracts would be considered terminated, and attempted to remove its 'phones and discontinue service to the depots, when the railway company began this action and the telephone company was enjoined from so doing, and on trial the action was dismissed and the contracts held unenforceable. From this judgment the railway company, plaintiff, appeals. *Held:*—

**Telephone service — railway depots — contracts — mutual — obligation — termination — perpetual — inequitable contract — court of equity — specific performance.**

1. The contracts as to Warwick and Tolna are not mutual in obligation, being subject to termination at the will of one of the parties, with a stipulation that no corresponding right shall be exercised by the other party; that the lifetime of the contracts may be practically perpetual or for so long a term as to render the mere license or privilege of installing the 'phones wholly inadequate as a consideraiton for the contract, though the same was voluntarily and understandingly entered into; that such want of mutuality, inadequacy of consideration, and length of term, considered together, render the contracts so inequitable that a court of equity will not enforce specific performance of them, but treat the same as invalid and nonenforceable.

**Contract — definite — cancelation — right of — valid.**

2. The five-year contracts as to McVille and Pekin are definite in consideration and lifetime, with no right of cancelation reserved to either party, and were entered into understandingly, and are not inequitable, and are valid and enforceable.

**Contract — specific performance — wanting in mutuality — equity — actions at law.**

3. That specific performance of contracts wanting in mutuality of obligation may be enforced in equity, as mutuality of contract, standing alone, may be insufficient to render a contract otherwise equitable nonenforceable and invalid in equity, a different rule being recognized in equity from that in actions at law as to want of mutuality.

**Contract — specific performance — negative covenants — restrain breach of — injunction — telephone company — 'phone in depots.**

4. While a court of equity will not decree specific performance of a nonmutual contract by compelling performance of it according to its terms, it will indirectly effect the same result, where possible, by merely restraining a breach of its negative covenants, as here illustrated, by enjoining the telephone company from discontinuing service and removal of its 'phone from the depots in this instance at McVille and Pekin.

**Enjoining breach of negative covenants — not specific performance — equitable relief.**

5. Enjoining the breach of negative covenants is not, strictly speaking, however, specific performance of the contract, but merely the granting of equitable relief awarded on the general equities of the case.

**Obligation — personal service — specific performance.**

6. Section 6614, Rev. Codes 1905, providing that an obligation to render personal service or to employ another in personal service cannot be specifically enforced, is not involved in this case.

27 N. D.—17.

**Telephone company — duty — general public — arbitrary refusal to install — conditions.**

7. Under the claim of the telephone company, that although equity would otherwise recognize the contract as enforceable it should not entertain this action because the telephone company has an adequate and specific remedy at law in an action for damages for breach of the contract, it is *held:*—

**Rights — general public — invasion of — telephones — rental price — relief — equity — contract — enforced in equity by injunction — cancelation of contract — notice of — costs — disbursements.**

(a) A duty rests upon the telephone company to furnish its services to the plaintiff as a member of the general public, and it cannot arbitrarily refuse to install a telephone in plaintiff's place of business so long as no conditions different from those generally given are required, and so long as such services are paid for, any more than plaintiff common carrier can discriminate against individuals, and say who it will carry and who it will not carry.

(b) The invasion or deprivation of this right of plaintiff to enjoy, with the general public, the use of a telephone and connections, which right will be violated by breach of this agreement, is not measureable by the mere rental price of the telephone instrument, and equity will not permit such right to be denied plaintiff while granted to all others in that vicinity; and an action at law is inadequate to afford relief for violation of such right, and equity will enjoin its violation.

(c) The telephone company was properly enjoined from removing the instruments and discontinuing the service pending the determination of its right to charge defendant for such service.

(d) A contract made by a public-service corporation with a patron or consumer, wherein it is to furnish service, will be enforced in equity by enjoining it from discontinuing its service or removing its property from the premises of the patron or consumer, instanced here by the enjoining of the telephone company from removing its instruments from the depots at McVille and Pekin.

**Telephones — contract for free service to railway.**

8. Plaintiff is held liable under its contracts at Tolna and Warwick stations for telephone service, chargeable from the date of notice of cancelation of such contracts to the date of the judgment entered in this case on this order.

**Costs — where neither party prevails.**

9. Neither party prevailing as to all contentions made, but each recovering equal relief, costs to either is denied, and no costs or disbursements will be taxed, each party to pay its own costs and disbursements.

Opinion filed March 6, 1914.

From a judgment of the District Court of Nelson County, *Templeton,* J., plaintiff appeals.

Modified.

*Murphy & Duggan,* for appellant.

Voluntary acceptance of the benefits of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known or ought to have been known to the person accepting. Rev. Codes 1905, § 5310.

The consideration at the time the contract was made, was reasonable and fair. This is the test as to adequacy of consideration. Willard v. Tayloe, 8 Wall. 557, 19 L. ed. 501; Morrill v. Everson, 77 Cal. 114, 19 Pac. 190; Cox v. Burgess, 139 Ky. 699, 96 S. W. 577; Lee v. Kirby, 104 Mass. 420; Finlen v. Heinze, 28 Mont. 548, 73 Pac. 123; Franklin Teleg. Co. v. Harrison, 145 U. S. 459, 36 L. ed. 776, 12 Sup. Ct. Rep. 900.

One cannot be released where contract is fairly and freely made. Franklin Teleg. Co. v. Harrison, 145 U. S. 459, 36 L. ed. 776, 12 Sup. Ct. Rep. 900; Nicholson v. Tarpey, 70 Cal. 608, 12 Pac. 778.

Mere inadequacy of consideration in a contract is no defense to its specific performance. 6 Am. & Eng. Enc. Law, 696; Ullsperger v. Meyer, 217 Ill. 262, 2 L.R.A.(N.S.) 221, 75 N. E. 482, 3 Ann. Cas. 1032; Marks v. Gates, 12 Ann. Cas. 123, note.

The rule is that specific performance of an obligation may be compelled. N. D. Codes 1905, art. 7, § 6609; Finlen v. Heinze, 28 Mont. 548, 73 Pac. 123.

The good will of a business is an adequate consideration for a contract, and equity will grant relief, by accounting, for its violation. Mapes v. Metcalf, 10 N. D. 601, 88 N. W. 713.

The contracts here in question are mutual. The option in one party to terminate the contract forms a part of the contract, and is legal and enforceable. Franklin Teleg. Co. v. Harrison, 145 U. S. 459, 36 L. ed. 776, 12 Sup. Ct. Rep. 900; Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 58 L.R.A. 227, 90 Am. St. Rep. 627, 51 Atl. 973; Singer Sewing-Mach. Co. v. Union Button-Hole & Embroidery Co. Holmes, 253, Fed. Cas. No. 12,904.

There is no reason why a contract fairly entered into should not be specifically performed and enforced, if each party can be given what it contracted to have. Louisville & N. R. Co. v. Coyle, 123 Ky. 854, 8 L.R.A.(N.S.) 433, 124 Am. St. Rep. 384, 97 S. W. 772; Sheffield Furnace Co. v. Hull Coal & Coke Co. 101 Ala. 446, 14 So. 672;

Fontaine v. Baxley, 90 Ga. 416, 17 S. E. 1015; Allen v. New Domain Oil & Gas Co. 24 Ky. L. Rep. 2169, 73 S. W. 747; Cooper v. Lansing Wheel Co. 94 Mich. 272, 34 Am. St. Rep. 341, 54 N. W. 39; Robson v. Mississippi River Logging Co. 61 Fed. 893.

Defendant, having assumed and enjoyed the benefits of the contract, is likewise bound by its obligations. 7 Am. & Eng. Enc. Law, 767, and note 1.

It is immaterial that the defendant is a corporation. It is bound in the same manner as an individual. Morris v. Ewing, 8 N. D. 99, 76 N. W. 1047; Dedrick v. Ormsby Land & Mortg. Co. 12 S. D. 59, 80 N. W. 153; Huron Printing & Bindery Co. v. Kittleson, 4 S. D. 520, 57 N. W. 233; Hunt v. Northwestern Mortg. Trust Co. 16 S. D. 241, 92 N. W. 23.

Equity will enforce such a contract. 22 Cyc. 848 et seq.; Joy v. St. Louis, 138 U. S. 1, 34 L. ed. 843, 11 Sup. Ct. Rep. 243; Gallagher v. Equitable Gaslight Co. 141 Cal. 699, 75 Pac. 329; Xenia Real Estate Co. v. Macy, 147 Ind. 568, 47 N. E. 147; Simpson v. Pittsburgh Plate Glass Co. 28 Ind. App. 343, 62 N. E. 753; Graves v. Key City Gas Co. 83 Iowa, 714, 50 N. W. 283; Sewickley Borough School Dist. v. Ohio Valley Gas Co. 154 Pa. 538, 25 Atl. 868; Franklin Teleg. Co. v. Harrison, 145 U. S. 459, 36 L. ed. 776, 12 Sup. Ct. Rep. 900; Union P. R. Co. v. Chicago, R. I. & P. R. Co. 163 U. S. 564, 600, 41 L. ed. 265, 278, 16 Sup. Ct. Rep. 1173.

Goss, J. Plaintiff seeks equitable relief to restrain removal of telephones from its depots at McVille, Pekin, Tolna, and Warwick. From judgment of dismissal plaintiff appeals. Facts are undisputed; issues are of law only.

The telephone company maintains an exchange in each of the four towns, and has been affording telephone service to the depots in the villages of McVille and Pekin since the year 1909, and of Tolna and Warwick since September and October, 1907. The 'phones were installed under written contracts, providing that the consideration for their installation, maintenance, and service by the telephone company should be the permission or license to install for the public convenience and that of the railroad company, granted by that company to the telephone company. The McVille and Pekin contracts stipulate that "this

agreement shall continue in effect for the term of five years from the date hereof, and thereafter until thirty (30) days' notice shall be given by either party to the other." They expire in 1914 if terminated by notice. No right is reserved in either party to earlier cancel them. The contracts as to Tolna and Warwick were altogether different. The consideration moving from the railroad company to the telephone company was the same, being merely the permission to install the 'phones in the depots and incidental benefits accruing to the telephone company and its patrons therefrom. It was terminable by the railroad company at its option on thirty days' written notice, but with no corresponding right of cancelation reserved to the telephone company. The contracts stipulate against cancelation by the telephone company, and provide that the telephones should remain in the depots, and that service thereon should be given the railroad company, free of any charge whatever for service, maintenance, or telephone connections, "so long as the party of the second part shall maintain a telephone exchange at said town." In brief, the McVille and Pekin contracts were not subject to cancelation by either party until after five years from date, when either could terminate. Service and 'phone connections were to be furnished free for five years, and had been, under the contract, paid for in advance by the privilege granted of installing the 'phones in the depots. As to Warwick and Tolna the contracts, as to the telephone company, were to be practically perpetual and without charge, and drawn on the theory that the license to install the telephones in said depots paid for services to be rendered by the telephone company without charge for as long a period as that company maintained its exchange in the village.

The telephones had been installed under said agreements, and no charge for telephone service had ever been made against the railroad company until a short time before the commencement of this action, when the railroad company was notified that the 'phones would be removed unless it paid the 'phone rental and charge for services as exacted of all other telephone patrons. This the railroad company refused to pay, whereupon the telephone company disconnected the depot 'phone and admittedly was about to remove its instruments from the depots when enjoined, whereupon the 'phones were again connected and service continued pending the outcome of this action. The present

conduct of the 'phone company may have been induced by chapter 252 of the Session Laws of 1911, requiring railroad companies, under penalty of a fine of not less than $100, and not more than $200 per day during any period of violation of the act, to "provide, furnish, and maintain in all of their freight and ticket offices in all towns, cities, and villages in this state, where there is a local telephone exchange, and where such service is available, reasonable and adequate telephone connections for the use and benefit of its patrons." Knowing that the railroad company was thus obliged to maintain these 'phones, the telephone company refused to longer furnish it free service, even though it had contracted to do so. Appellant contends that as the contracts were voluntarily entered into for a then satisfactory consideration, and partially performed, and the benefits enjoyed by both parties for several years, they are enforceable and the breaching of them should be enjoined. Respondent asserts all of them to be unenforceable for want of mutuality of contract and remedy; that the contracts are so inequitable that they should neither be enforced nor their breach enjoined; that they stipulate for the rendition of personal service, the specific performance of which cannot, under § 6614, Rev. Codes 1905, be enforced; and that plaintiff has no standing in equity, it having full and adequate relief in law by an action for damages for breach of contract.

It is plain that the two contracts are radically different from a legal standpoint. The five-year contracts for McVille and Pekin stations are in all respects mutual and binding according to their terms, unless otherwise so inequitable that equity will not enforce them nor enjoin their breach. They are mutual as given upon a consideration, since substantially performed with the contract terms fixed, with neither party having the right to terminate at its pleasure until after the expiration of the five-year period. As to adequacy of consideration, the term of the contract has an important bearing thereon, and where the contract is mutual equity will not, other than in exceptional cases, relieve from the contract obligations merely because of what may seem to be an inadequate consideration. Franklin Teleg. Co. v. Harrison, 145 U. S. 459, 36 L. ed. 776, 12 Sup. Ct. Rep. 900; Rausch v. Hanson, 26 S. D. 273, 128 N. W. 611.

The Tolna and Warwick contracts present an entirely different aspect. These are not mutual in obligation, having at all times been

terminable on thirty days' notice by the railroad company. But want of mutuality alone is regarded differently in equity from actions at law. In equity want of mutuality of contract is not all-controlling. Singer Sewing-Mach. Co. v. Union Button-Hole & Embroidery Co. Holmes, 255, Fed Cas. No. 12,904. As declared in Pomeroy's Equity Jurisprudence, vol. 6, § 769, the rule that a contract to be enforceable must be mutual at the time it was entered into, controlling in law actions, is in equity "open to so many exceptions that it is of little value as a rule." In law actions mutuality is determined as of the time the contract is entered into. In equity the question is considered as of the time of the filing of the bill for equitable relief, as is illustrated by specific performance of the ordinary option contract, which to be an option must be unilateral, and the filing of the bill to enforce the same being considered its irrevocable acceptance. Pom. Eq. Jur. § 773.

But plaintiff is seeking specific performance indirectly by enjoining a breach of contract. The granting of such relief is within equitable cognizance, to be exercised, however, as a legal, and not arbitrary, discretion. Ullsperger v. Meyer, 217 Ill. 262, 272, 2 L.R.A.(N.S.) 221, 75 N. E. 482, 3 Ann. Cas. 1032; Miller v. Tjexhus, 20 S. D. 12, 104 N. W. 519. And the contract, the violation of which is to be restrained, must be so far equal and just in its terms and circumstances as to be enforceable in equity and good conscience. Pom. Eq. Jur. § 785. Franklin Teleg. Co. v. Harrison, 145 U. S. 459, 36 L. ed. 776, 12 Sup. Ct. Rep. 900. And·it must not operate harshly or be inequitable, or equitable relief be denied. Easton v. Lockhart, 10 N. D. 181, 193, 86 N. W. 697. "Although mere inadequacy of consideration standing alone will not prevent a court of equity from enforcing a contract, it is an ingredient which, associated with others, will contribute to prevent the interference of a court of equity. Cathcart v. Robinson, 5 Pet. 264, 8 L. ed. 120. The court may examine into the consideration of the contract, its fairness and equity and all the circumstances connected with it, and if anything inequitable appears it will not be enforced. Rodman v. Zilley, 1 N. J. Eq. 320." Quoting from the note to Marks v. Gates, 12 Ann. Cas. 120–124. Kaster v. Mason, 13 N. D. 107, 99 N. W. 1083. Marks v. Gates is also in point, and a strong authority for respondent's contention. The want of mutuality, inadequacy of consideration, and the term of the contract stipulating as it does for gratuitous service for

perhaps a hundred years to be rendered by defendant to plaintiff for the mere privilege, license, or permission granted to install its instruments, taken as a whole, demand our refusal to assist in enforcing such an agreement. The contract in effect amounts to but an offer to defendant that if it will forever furnish free telephone service to plaintiff, defendant may install and keep in order for all time its telephones in plaintiff's place of business. A search of the books fails to disclose where equity ever enforced so inequitable a contract. It should not do so indirectly by enjoining its breach. Marks v. Gates, and the note thereto, cites abundant authority for our denial of relief to plaintiff as to the two contracts under which these 'phones were installed in the Tolna and Warwick depots. Morrill v. Everson, 77 Cal. 114, 19 Pac. 190; Newman v. Freitas, 129 Cal. 283, 50 L.R.A. 548, 61 Pac. 907. As to these two stations the telephone company, after notice of cancelation given, is under no obligation to furnish 'phones and service without the usual compensation therefor being paid.

Our holding that the McVille and Pekin contracts are enforceable and valid necessitates consideration of respondent's assertion of want of power in a court of equity to afford relief by decreeing specific performance; and also that the contract calls for the rendition of personal service under § 6614, Rev. Codes 1905; and, further, that even though otherwise cognizable in equity, relief should be denied on grounds that the railroad company may have full and adequate relief in an action at law.

Specific performance is not being decreed, and hence the authorities cited by respondent, illustrated by holdings refusing to compel specific performance of building and similar contracts, are not in point. We may assume that the court is without power to compel respondent to furnish telephone service to this company any longer than it, as a public service corporation in the exercise of its franchise, furnishes telephone service to the general public. The courts of equity enforce the observance of such contracts as this by restraining a breach of contract. This is indirectly compelling specific performance by restraining a defendant from violating negative covenants. Here the telephone company has agreed to, "at its own cost and expense, install and maintain said telephone instrument in said depot. . . ." And that "it will, without charge therefor, furnish the party of the first part, its agents

and employees, full telephone service in connection with its exchange at (McVille and Pekin), it being the intent hereof that the party of the first part shall be at no expense whatever, either by way of rental or otherwise, on account of the installation and maintenance of said telephone instrument, or the enjoyment of the telephone service in connection therewith." This portion of the contract defendant threatens to breach. Singer Sewing-Mach. Co. v. Union Button-Hole & E. Co. Holmes, 253, Fed. Cas. No. 12,908, answers respondent's contention as does the following from Metropolitan Exhibition Co. v. Ewing, from the United States circuit court of the district of New York, 7 L.R.A. 381, 42 Fed. 198: "The doctrine is now generally recognized that while a court of equity will not ordinarily attempt to enforce contracts which cannot be carried out by the machinery of a court, like that involved in the present case [a baseball contract with player reserve clause], it may nevertheless practically accomplish the same end by enjoining the breach of a negative promise, and this power will be exercised whenever the contract is one of which the court would direct specific performance if it could practically compel its observance by the party refusing to perform through a decree for specific performance. It is indispensable, where the contract does not relate to realty, that it be one for the breach of which damages would not afford an adequate compensation to the plaintiff. It must be one in which the plaintiff comes into court with clean hands, and which is not so oppressive as to render it unjust to the defendant to enforce it. It must be one in which there are mutual promises, or which is founded on a sufficient consideration. It must be one the terms of which are certain, and in respect to which the minds of the parties have distinctly met so that there can be no misunderstanding of their rights and obligations." To the same effect see Cort v. Lassard, 6 L.R.A. 653 and note (18 Or. 221, 17 Am. St. Rep. 726, 22 Pac. 1054); Singer Sewing-Mach. Co. v. Union Button-Hole & E. Co. supra; and Philadelphia Ball Club v. Lajoie, 202 Pa. 210, 58 L.R.A. 227, 90 Am. St. Rep. 627, 51 Atl. 973, where such negative relief is granted in the following summary of the court's holding: "Substantial justice between the parties requires that the court should restrain the defendant from playing with any other club during his contract with the plaintiff;" and this even though the court could not, because of the contract being one to render personal service as exempted under our statute, § 6614,

Rev. Codes 1905, but declaratory of the common law, compel specific performance of the particular contract by compelling the player to actually perform the same. The last two cases are similar instances where the court lacked the power to decree specific performance, but yet possesses the right used to prevent the player from selling his services to others when they belonged under his contract to the complainant. We can then assume that the performance by this telephone company of its part of the agreement will be the rendition of personal service under § 6614, Rev. Codes 1905 (which, however, is contrary to fact, as that section is meant to cover the rendition of personal service instanced by the service rendered by musicians, actors, writers, baseball players, and the like, and having no relation to service afforded the public by public service corporations), yet the statute does not constitute a defense to an action in equity to restrain breach of negative contract covenants.

Respondent claims relief should be denied, asserting plaintiff to have an adequate remedy at law. In this respondent is in error. It overlooks the duty imposed by law upon it to furnish its services to any of the public demanding and willing to pay for them and within its ability to furnish as public service. It cannot arbitrarily refuse to install a telephone in plaintiff's place of business so long as no conditions peculiar or different from those generally given are required, and so long as such services are paid for, any more than plaintiff common carrier can discriminate against individuals, and say who it will carry and who it will not carry. A duty rests upon the telephone company analogous to those under which gas and light companies and common carriers deliver and sell their services to the public. It is the deprivation of this right in plaintiff to have and enjoy with the general public the use of a telephone and connections at this exchange that will be violated by a breach of this agreement, and which right is not measured by the mere rental price of the telephone instrument. This right equity will not permit to be arbitrarily denied plaintiff while granted to all others in that vicinity. This illegal deprivation of a right in all respects identical with the denial of a right to gas or light of such similar public service corporations, equity will enjoin, as an action at law can afford the patron no adequate relief. Sickles v. Manhattan Gaslight Co. 64 How. Pr. 33. A dispute as to obligation to pay for service as here present is no ground for arbitrary and unreasonable action by respond-

ent. "When a dispute arises between the company and a consumer, the latter is entitled to have his rights investigated by the courts." In such a case "an injunction will be granted to prevent the cutting off of the supply of gas until the cause can be tried." Gallagher v. Equitable Gaslight Co. 141 Cal. 699, 75 Pac. 329, to the same effect, is a case on all fours with the one at bar, the court by injunction "restraining the gas company from discontinuing the furnishing of gas," and by indirection compelling it to observe the obligation of its contract with the consumer. Mackin v. Portland Gas Co. 38 Or. 120, 49 L.R.A. 596, 61 Pac. 134, 62 Pac. 20; Tacoma Hotel Co. v. Tacoma Light & Water Co. 14 L.R.A. 669, and note (3 Wash. 316, 28 Am. St. Rep. 35, 28 Pac. 516); Xenia Real Estate Co. v. Macy, 147 Ind. 568, 47 N. E. 147; and 22 Cyc. 850, with notes. Injunctional relief went much further than here given in a very similar case of People's Natural Gas Co. v. American Natural Gas Co. 233 Pa. 569, 82 Atl. 935, where that court says: "It is no longer a debatable question in Pennsylvania that an injunction is the proper remedy to prevent breach of a contract made by a natural gas company with a consumer by enjoining it from shutting off the gas."

Aside from these considerations the breach of this agreement would involve a multiplicity of suits to recover rental wrongfully extorted, granting that the same could be recovered when once paid. 22 Cyc. 766.

There is yet another reason for granting relief. Assuming chapter 252 of the Session Laws of 1911 to be valid, the company might be subject to criminal prosecution and resulting damages should it permit the 'phones to be removed from its depots, because of the sole reason that it did not care to pay the rental therefor pending determination of its rights under its contract with the defendant.

Our holding summarized is that two of these contracts are invalid, and equity will not interfere with defendant when it refuses to longer perform thereunder; the two contracts of the five-year term are mutual in obligation, and are not so inequitable and inadequate in consideration under the circumstances of this case but that equity will enjoin their violation to the extent herein before set forth; that to do so is not in excess of the equitable powers of the court; that plaintiff has no adequate remedy at law; and that the injunction as prayed for should issue subject to modification should a change in the status of the parties

in equity require it.    As each party equally prevails on this appeal, neither will recover costs of the other in this court or on trial below. The trial court will enter decree accordingly, affirming its judgment of dismissal as to Warwick and Tolna stations, but vacating its dismissal of this suit as to the stations of McVille and Pekin, as to which two stations injunctional relief will be granted restraining removal of telephones or discontinuance of telephone service to the depots until after expiration of the telephone contracts in 1914, during which time no charge therefor shall be recoverable.    Plaintiff is liable under its contracts at Tolna and Warwick stations for charge for telephone service from the date of notice of cancelation of such contracts by defendant to date of judgment entered on this order.

Decree will be entered accordingly.