METROPOLITAN EXHIBITION CO. *v.* EWING.

(*Circuit Court, S. D. New York.* March 25, 1890.)

CONTRACT—INTERPRETATION—INJUNCTION.

The contract with defendant for his services as a base-ball player gave plaintiff, a base-ball association, the "right to reserve" him for the next season on condition that he should not be reserved at a salary less than for the current season without his consent, and that he should be one of not more than 14 reserved. *Held*, (1) the term "right to reserve" is ambiguous, and does not imply a contract by the player to devote his services exclusively to the association during the ensuing season, without the aid of extrinsic evidence to show that it has a recognized meaning in the nomenclature of the business to which the contract relates; (2) that, in order to ascertain the meaning of such a term, it is competent to do so by reference to other parts of the contract, and to other contracts made by the parties in respect to the same subject-matter on previous occasions; (3) that interpreting the contract by resorting to the proper sources of explanation the term is meant to give a prior and exclusive right in favor of one base-ball association as against other base-ball as-sociations to contract with a player for his services for another season, and the contract is merely an exclusive right to make a contract upon terms to be agreed upon by the parties; (4) that although courts of equity will prevent by injunction the breach of contracts for professional services in some cases in which they will not decree specific performance, they will not undertake to make contracts for par-ties, or to enforce in any way those as to the terms of which the parties have not arrived at a definite understanding; (5) although preliminary relief will not be granted in a case in which it is doubtful whether the plaintiff will be finally suc-cessful, yet, where the questions are such that they can be as fully considered and as safely decided upon a motion for a preliminary injunction as at the final hear-ing, it is the duty of the court to decide them upon such a motion when such an in-junction is essential to the protection of the plaintiff.

In Equity.   On bill for injunction.

*Joseph F. Choate* and *George F. Duysters*, for plaintiff.

*Henry Bacon,* for defendant.

WALLACE, J.   This action is brought to restrain a threatened breach of contract for the performance of personal services which require special aptitude, skill, and experience.   It is a case in which an action at law would not afford the plaintiff an adequate remedy for the breach, and in which the power of the court should be exercised by preventive interposition, if it is found that the contract is such as the plaintiff claims it to be.   The circumstances are such that, unless a preliminary injunction is granted, the plaintiff will obtain no effectual remedy, because, before the cause can be brought to final hearing, the time will have passed within which the relief sought would be practically useful, and, if it be then adjudged that the plaintiff is entitled to a permanent injunction, the judgment will be declaratory merely.   Although preliminary relief is not to be granted in a case in which it is doubtful whether the plaintiff will be finally successful, yet, where the questions are such that they can be fully considered and as safely decided upon a motion for a preliminary injunction as at final hearing, it is the duty of the court to consider and determine them, and not defer the party invoking its assistance to a time when a decree, if awarded, would be too late.

The contract upon which the plaintiff founds its claim for relief is in form between the New York Base-Ball Club as party of the first part, and the defendant as party of the second part; but there is no reason to doubt that the New York Base-Ball Club was the agent of the plaintiff in entering into the contract, that the plaintiff is the real principal, that the contract was intended to inure for the benefit of the plaintiff, and that the plaintiff is entitled to enforce it against the defendant to the extent that the New York Base-Ball Club could do so.   The doctrine is now generally recognized that, while a court of equity will not ordinarily attempt to enforce contracts which cannot be carried out by the machinery of a court, like that involved in the present case, it may nevertheless practically accomplish the same end by enjoining the breach of a negative promise, and this power will be exercised whenever the contract is one of which the court would direct specific performance, if it could practically compel its observance by the party refusing to perform through a decree for specific performance.   It is indispensable, where the contract does not relate to realty, that it be one for the breach of which damages would not afford an adequate compensation to the plaintiff.   It must be one in which the plaintiff comes into court with clean hands, and which is not so oppressive as to render it unjust to the defendant to enforce it.   It must be one in which there are mutual promises, or which is founded on a sufficient consideration.   It must be one the terms of which are certain, and in respect to which the minds of the parties have distinctly met, so that there can be no misunderstanding of their rights and obligations.

The contract is executed as of the date of April 29, 1889.   It is a

formal document, consisting of 20 articles, by which the New York Base-Ball Club employs the defendant, and the defendant undertakes to perform professional services as a base-ball player for the club for the season (specified in article 2) beginning April 1, 1889, and ending October 31, 1889. Article 20 provides that the salary to be paid the defendant shall be $2,000, payable semi-monthly. Among other things, the contract provides by different articles that the club may at any time terminate the contract on 10 days' notice to the defendant, whereupon the obligations of both parties are to cease; that the club shall provide the defendant while "abroad" with proper board and lodging, and pay all necessary traveling expenses; that if the defendant, during the term of his employment, be guilty of any excessive indulgence in liquor, or of gambling, or of insubordination, he shall be liable to certain specified penalties; and that, if the club ceases to be a member of the National League of Professional Base-Ball Clubs, either compulsorily or voluntarily, the "defendant shall, if the right of reservation be transferred" by the club to any other club, receive from that club at least the same amount in salary that he receives by the present contract. It contains, also, the following provision:

"Article 18. It is further understood and agreed that the party of the first part shall have the right to 'reserve' the said party of the second part for the season next ensuing the term mentioned in paragraph 2, herein provided, and that said right and privilege is hereby accorded to said party of the first part upon the following conditions, which are to be taken and construed as conditions precedent to the exercise of such extraordinary rights or privileges, viz.: (1) That the said party of the second part shall not be reserved at a salary less than that mentioned in the 20th paragraph herein, except by the consent of the party of the second part; (2) that the said party of the second part, if he be reserved by the said party of the first part for the next ensuing season, shall not be one of more than 14 players then under contract,—that is, that the right of reservation shall be limited to that number of players, and no more."

The plaintiff alleges that the defendant was one of 14 players, and no more, so reserved under said contract; that on the 22d day of October, 1889, plaintiff exercised its option to reserve the defendant for the season of 1890, by giving the defendant due and timely notice, in writing, of its intention to do so; and that, notwithstanding the exercise of this option, the defendant has engaged his services for the season of 1890 to another organization, to act for it as a base-ball player during that season. The plaintiff insists that, by the terms of the contract, it is entitled to the services of the defendant as a base-ball player for the season of 1890 upon the terms and conditions of the contract for the season of 1889, except the condition giving a right to reserve him for a subsequent season.

The case turns upon the meaning and effect of the clause and contract which gives the club the right to reserve the defendant for the season next ensuing. It is plain enough that the option is a right of reservation for the next ensuing season only,—the season ensuing the term mentioned in article 2,—and does not extend beyond the term from April 1,

1890, to October 31, 1890. It is equally plain that the salary for the ensuing season is to be the same as that for the season of 1889, unless the parties mutually consent to a change. But what is the character of the option which the plaintiff is permitted to exercise?, What is the right to "reserve" the defendant? If it is the right to retain and have his services as a base-ball player for the season of 1890, when is the right of election to be manifested, and upon what terms are these services to be rendered? Can the club wait until April 1, 1890, before it manifests its intention to exercise the option? Is the club to pay the defendant's board and lodging while he is "abroad," serving the club, during the season of 1890? Can the club discharge him at any time during that season on 10 days' notice? Are the penalties for intoxication, gambling, or insubordination enforceable during the season of 1890? In short, does the contract embody the definite understanding of the parties to it in respect to their reciprocal rights and obligations after the season of 1889 shall have ended? If the term, "the right to reserve," has no defined meaning, and there were no extrinsic sources by which to ascertain the sense in which it is used by the parties, it would be an ambiguous phrase. As applied to a contract for personal services, the right to reserve would convey a very unintelligible conception of the conditions and incidents of the service to be rendered or enjoyed. A contract by which one party agrees, for an equivalent, to reserve himself for another for a stated period, or to reserve himself as a lawyer or doctor or artist or laborer for a specified term, would very inadequately express a promise to devote his professional or manual services exclusively to the other during that period; and the promise of a base-ball player to reserve himself for a particular club for a given season would hardly, without more, convey any definite meaning of the understanding of the parties. It certainly would not bind him to submit to any special rules or regulations respecting the performance of his services not expressly consented to, or not to be necessarily implied from the nature of the employment and the situation of the contracting parties. If it had been the meaning of the contract to allow the club to renew the engagement of the defendant for a second season upon the same conditions as those for the first season, that intention could have been easily and unequivocally expressed. As it is, it is left wholly to implication, unless the "right to reserve" is a term having a defined and specific signification. This ambiguity suggests such grave doubt as to the meaning of the clause that in two adjudged cases, in which it has been considered by the courts, the judges have thought it too indefinite to be enforceable. In *Exhibition Co.* v. *Ward*, 9 N. Y. Supp. 779, (in the supreme court of this state,) Mr. Justice O'BRIEN was of the opinion that the failure to provide for the terms and conditions of the contract for the second season rendered the clause so indefinite and uncertain that it could not be the basis of equitable relief, or that it meant that every player is bound for the ensuing season upon the same terms and conditions as those of the first season, including the signing of a new contract containing the option to reserve. In *Philadelphia Ball Club* v. *Hallman*, in the court of common pleas of Philadelphia, Judge THAYER

was of the opinion that the failure to designate the terms and conditions of the new engagement under which the player is to be reserved rendered the contract of reservation wholly uncertain, and therefore incapable of enforcement.

Where the terms employed to express some particular condition of a contract are ambiguous, and cannot be satisfactorily explained by reference to other parts of the contract, and the parties have made other contracts in respect to the same subject-matter, and apparently in pursuance of the same general purpose, it is always permissible to examine all of them together in aid of the interpretation of the particular condition; and, if it is found that the ambiguous term has a plain meaning by a comparison of the several contracts and an examination of their provisions, that meaning should be attributed to it in the particular condition. So, also, if it appears that the term used has an established meaning among those engaged in the business to which the contract has reference, and, unless it is given that meaning, is indefinite and equivocal, it should be treated, in interpreting the contract, as used according to that understanding; and in construing a contract the court is always at liberty to look at the surrounding and antecedent circumstances, and avail itself of the light of any extrinsic facts which will enable it to view the contract from the stand-point of the parties at the time when it was made. In the present case, it will satisfactorily appear, by resort to these sources of interpretation, that the term "right to reserve" is used in the contract in the sense that obtains in base-ball nomenclature, and that it is intended to signify an option, the character of which was well understood by base-ball clubs and professional players when the present contract was made. Obviously, the right to reserve given by the eighteenth clause of the contract is the same thing as the right of reservation mentioned in that part of the contract which provides that the present club may disband, and transfer its right of reservation to some other club. The agreement is in a form common to all contracts between base-ball clubs organized under what is known as the "national agreement" and professional players, a form which is prescribed by the national agreement. The national agreement is a compact between the various base-ball associations constituting the National League Base-Ball Clubs and the American Association of Base-Ball Clubs, made with a view to regulate the rights and obligations of the members as respects one another. One of its paramount features consists of provisions regulating the privilege of clubs to reserve a stated number of players. The provisions are framed to prevent any club of the National League or the American Association from engaging a player already reserved by another, and to render the player so reserved ineligible for employment by any other club. They require each club, on the 10th day of October in each year, to transmit to all the other clubs a reserved list of players, not exceeding 14 in number, then under contract, and of such players reserved in any prior list who have refused to contract for another year, and declare such players ineligible to contract with any other club. Inasmuch as the parties to the national agreement comprise all, or substantially all, the clubs in the country

which employ professional players, this national agreement, by indirection, but practically, affects every professional player, and subordinates his privilege of engaging as he chooses to the option of the club by which he is under reservation. As is stated in a recent publication edited by a prominent professional player:

"The most important feature of the national agreement, unquestionably, is the provision according to the club members the privilege of reserving a stated number of players. No other club of any association under the agreement dare engage any player so reserved. To this rule, more than any other thing, does base-ball, as a business, owe its present substantial standing. By preserving intact the strength of the team from year to year, it places the business of base-ball on a permanent basis, and thus offers security to the investment of capital. The reserve rule itself is a usurpation of the player's rights; but it is, perhaps, made necessary by the peculiar nature of the ball business, and the player is indirectly compensated by the improved standing of the game. The reserve rule takes a manager by the throat, and compels him to keep his hands off his neighbor's enterprise."

In the contracts between clubs and players as framed prior to November, 1887, there was no provision by which the player consented to the option for reserve on the part of the club. But the contracts did contain a condition that the player should conform to, and be governed by, the constitution and provisions of the national agreement; and the player thereby assented to become ineligible for engagement by any other club of the league during the season of his engagement by a particular club, or while the option of re-engaging him for an ensuing year on the part of that club remained in force. Changes were made from time to time in various features of the national agreement. The players were obliged to inform themselves of the latest changes, in order to understand the precise terms of their contract with the clubs. They became unwilling to consent to a form of contract by which they were to be subjected to conditions not mentioned in the contract itself. In November, 1887, a committee representing the professional players met a committee representing the parties to the national agreement for the purpose of agreeing upon certain changes to be made in the form of the contract. The committees finally agreed that the obnoxious clause in the contract should be omitted, and the clause now found in the eighteenth article should be inserted. This was the origin of the clause giving to the club, by the contract itself, the option of reserve. The clause was manifestly inserted in order to give, by an express condition, the right of reservation to the clubs which theretofore the players had only given by agreeing to be bound by the terms of the national agreement. By ascertaining what that right of reservation was, it can be plainly seen what the parties had in mind in using the term in the present contract. If, when the contract was made, the term had a well-understood definition, there was no necessity to particularize in the contract the conditions or characteristics of the option.

Reference has already been made to the provision of the national agreement requiring each club, on the 10th day of October in each year, to transmit to all the other clubs a reserved list of players, and declaring

such players ineligible to contract with any other club.    This provision is to be read in connection with another provision of the national agreement, which prescribes that no contract shall be made "for the services of any player by any club for a longer period than seven months, beginning April 1st and terminating October 31st, and no such contract for services to be rendered after the expiration of the current year shall be made prior to the 20th day of October of such year."    The two provisions, read together, allow a period of 10 days to intervene between the time when a club can exercise the privilege of placing a player upon its reserved list and the time when it can make a contract with him for services to be rendered in an ensuing year, thus emphasizing a distinction between the right to treat the player as reserved and the contract which is to fix the terms upon which the reservation is to be complete.    The effect of these provisions is that, when the club has exercised its privilege of reservation, no other club is permitted to negotiate with the player; but the club which has placed him upon the reserved list, and no other, is then at liberty to enter into a contract with him to obtain his services for an ensuing year.    Consequently the right of reservation is nothing more or less than a prior and exclusive right, as against the other clubs, to enter into a contract securing the player's services for another season.    Until the contract is made which fixes the compensation of the player and the other conditions of his service, there is no definite or complete obligation upon his part to engage with the club.    He agrees that he will not negotiate with any other club, but enjoys the privilege of engaging with the reserving club or not, as he sees fit.    Read with this understanding, the clause in question by which the privilege of reserving the defendant is given to the club expresses definitely the terms of the option.    If the club exercises the right of reservation, it agrees in advance that the player shall receive at least as large a salary as he has received during the current year, and leaves it open to him to contract on that basis for the next season, or to insist on a larger salary. All the other terms of the engagement are matters of negotiation between the club and the player.    The law implies that the option of reservation is to be exercised within a reasonable time; but when this has been done the right to reserve the player becomes the privilege, and the exclusive privilege, as between the reserving club and the other clubs, to obtain his services for another year if the parties can agree upon the terms.    As a coercive condition which places the player practically, or at least measurably, in a situation where he must contract with the club that has reserved him, or face the probability of losing any engagement for the ensuing season, it is operative and valuable to the club.    But, as the basis for an action for damages if the player fails to contract, or for an action to enforce specific performance, it is wholly nugatory.    In a legal sense, it is merely a contract to make a contract if the parties can agree.    It may be that heretofore the clubs have generally insisted upon treating the option to reserve as a contract by which they were entitled to have the services of the player for the next season upon the terms and conditions of the first season, and even requiring him to enter into a new con-

tract containing the option for reservation; and it may be that the players have generally acquiesced in the claims of the clubs. However this may be, the players were not in a position to act independently; and, if they had refused to consent to the terms proposed by the clubs, they would have done so at the peril of losing any engagement. The facts, therefore, are not such as to permit any weight to be given to the acts of the parties as evincing their own construction of the contract.

It follows that the act of the defendant in refusing to negotiate with the club for an engagement for the season of 1890, while a breach of contract, is not the breach of one which the plaintiff can enforce. The motion for an injunction is denied.