(*Circuit Court of Cook County. In Chancery.*)

## Donker & Williams Co.

### vs.

## H. G. Vance.

(October 2, 1900.)

1. SPECIFIC PERFORMANCE—CONTRACTS FOR PERSONAL SERVICES. Specific performance of a contract for personal services cannot be enforced.

2. CONTRACTS FOR PERSONAL SERVICES—INJUNCTION TO RESTRAIN BREACH OF—WHAT SERVICES ARE UNIQUE AND EXTRAORDINARY. A bill filed by an employer against an employee alleging that the defendant is competent, skilled and well versed in the leather goods business and competent to take charge of and become foreman or superintendent of the leather goods department of the complainant and that defendant's knowledge and skill are peculiar to him, and that complainant cannot find any other person possessing the same peculiar skill and qualifications; that by reason of such qualifications complainant employed defendant as foreman; that defendant entered complainant's employ, became acquainted with the names of the persons from whom complainant purchased raw materials, the prices paid for same and the cost of production of the articles manufactured; and that defendant has left said employment and is engaging in business with others in competition with complainant, does not state a case for an injunction.

3. CONTRACTS FOR PERSONAL SERVICES—INJUNCTION WILL NOT LIE TO RESTRAIN BREACH OF. The rule that injunction will lie to restrain the breach of a contract for personal services does not apply to contracts between master and servant. It is restricted to cases of actors, players and the like where the services are unique and extraordinary.

4. SAME. There is no difference in principle between compelling a party to work for one man in particular and enjoining him from working for others.

5. CONSTITUTIONAL LAW—SLAVERY—INVOLUNTARY SERVITUDE—WHAT IS. To compel a servant or employee to work for a particular person is against the spirit of the thirteenth amendment to the federal constitution which prohibits slavery and involuntary servitude. "Involuntary servitude" means servitude outside of slavery. No man can become the servant of another except by contract.

6. PLEADING—CONCLUSIONS IN. An allegation that the services of an employee are special and peculiar states a mere conclusion.

Bill to restrain employee from breaking employment contract. Heard on demurrer to bill before Judge Edward F. Dunne.

The facts are stated in the opinion.

*Pam, 'Calhoun & Glennon,* solicitors for complainant.

*Rich & Loer,* solicitors for defendant.

DUNNE, J.—

Can a mechanic who has contracted his services to an employer a definite period of time and who violates his contract, and quits his employer's service during the term of the contract be restrained by injunction from working elsewhere during the term of the contract? This is the legal proposition presented by the bill and demurrer filed in this cause.

The salient allegations of the bill are as follows, to-wit, that "defendant is competent, skilled and well versed in the leather-goods business and competent and able to take charge of and become foreman or superintendent of the leather goods department of complainant's business;" that "his knowledge and skill are peculiar and special to himself;" that complainant cannot "find any other person possessing the same peculiar skill and qualifications;" that by reason of such qualifications complainant employed him as foreman for $18 a week in consideration of which defendant agreed to give his whole time, skill and experience for a certain period and to work for no one else; that pursuant to said contract defendant entered complainant's employ, worked for it about two years, became acquainted with the names of the persons from whom complainant purchased its raw materials and the prices paid for the same and the cost of production of the articles manufactured by complainant; that defendant has left complainant's employ and is engaging in business with others in competition with complainant; that "complainant is absolutely unable to replace the defendant and cannot *at the present time* procure any other person possessed with the requisite skill and ability to carry on the services agreed to be performed by defendant." All these allegatiins are admitted by the demurrer.

At the outset it will be conceded that specific performance of such a contract cannot be decreed. No court in any country where the common law prevails has ever attempted to compel one man to work for another no matter how solemnly he has contracted so to do. It is to be hoped that many years will yet elapse before such a decree will be entered. Nevertheless it is contended by counsel for complainant that while courts of equity will not affirmatively enforce the specific performance of such contracts they will negatively enforce the performance of the same by enjoining the person so contracting from working elsewhere, and in support of their contention they cite numerous authorities. *Hoyt v. Fuller*, 19 N. Y. S. 962; *Duff v. Russell*, 14 N. Y. S. 134;[1] *Canary v. Russell*, 30 N. Y. S. 122, 9 Misc 58; *Daly v. Smith*, 49 How. Prac. 150, 38 N. Y. Super. Ct. 158; *Hayes v. Willio*, 11 Abbott's Prac. N. S. 167; *McCaull v. Braham*, 16 Fed. 37. All of these cases on examination will be found to be not cases between master and servant or employer and employee providing for the rendering of services which would bring the contracting parties in close personal contact from day to day over a lapse of time, but pure theatrical contracts providing for the production of certain plays or exhibitions before the public and in all of them it would appear that large amounts of money had been expended in providing theaters, advertising, etc., upon the faith of the contracts. Because of such expenditures and because the services contracted for were in their very nature unique and of an extraordinary character so that they could not be replaced, and consequently there could be no adequate remedy at law, the court of chancery has very properly intervened to prevent the contracting performers from exhibiting elsewhere. There is a plain distinction between such cases and cases involving the relation of master and servant or employer and employee. In the latter cases constant every day contact between the parties is common, if not absolutely essential. In the former it is uncommon and unnecessary. In the latter the servant is subject to the varying orders and directions of the master. In the former

---

[1] S. C. 16 N. Y. S. 958, 133 N. Y. 678, 31 N. E. 1.

the theatrical performer is subject to no orders save such as are specified in the contract. In the latter the services are of a common every day character the loss of which can be supplemented by the services of others of a substantially similar character. In the former the services contracted for are always of a unique and extraordinary character incapable of duplication.

Counsel for complainant has cited no case in which an employee has been enjoined at the instance of his employer from working for another. On the contrary as they admit the issuance of an injunction has been denied as against an insurance agent, in *Burney v. Ryle*, 91 Ga. 701, 71 S. E. 986. As against a base ball player, in *Metropolitan Exhibition Co. v. Ewing*, 42 Fed. 198, 7 L. R. A. 381. As against a lithographic designer in *Strowbridge Lithographic Co. v. Crane*, 20 Civ. Pro. 24, 12 N. Y. S. 834. And as against an acrobat in *Cort v. Lassard*, 18 Oreg. 221, 22 Pac. 1054, 17 Am. St. Rep. 1054, 6 L. R. A. 653.

It is not to be wondered at that counsel has not been able to cite cases enforcing, even negatively, by injunction the maintenance of the relation of master and servant where either party objects thereto. In the judgment of this court it is against public policy to force an unwilling servant to work for his master, or an unwilling master to keep a servant after their relations to each other become strained and distasteful. To force them into daily contact with each other under such circumstances would be fraught with much more evil consequences than might flow from the breach of the contract of employment.[1] Better far to leave them to their remedies at law, even though inadequate, than to force association and personal contact between hostile and unwilling parties.

But it may be said that there is a difference between enjoining a man from working for others and compelling him to work for one man in particular. In effect there is none. To say to a man, "Work for me or nobody," if that man be, as is alleged of defendant, without means, is to say,—"Work for me or starve." Such a heartless edict should not go out of a court of equity. That there are cases in which courts of

equity have negatively enforced specific performance where it was impossible to do so by positive decree is not denied, but I have failed to find any arising between master and servant or employer and employee.[1] Indeed it is against the spirit of the thirteenth amendment of the constitution of the United States which prohibits "slavery and involuntary servitude" within its borders. Involuntary servitude in juxtaposition to the word slavery has a significance. So placed it cannot mean the same as slavery else it is a redundancy. It must mean, servitude outside of slavery. Outside of slavery servitude can originate only by contract. No free man can become the servant of another except by consent, to-wit, by contract. Involuntary servitude can only arise therefore after the consenting party changes his mind and becomes an unwilling servant—*involens servitor*. But, whether or not the relief sought for in this cause comes within the inhibition of the thirteenth amendment, the court is of the opinion that to grant the relief prayed for would be against sound public policy.

It is claimed that the allegation that "the knowledge and skill of defendant are peculiar and special to himself," and that "complainant cannot at the present time procure any other person possessed of the requisite skill and ability to conduct the services agreed to be performed by defendant," places the cause in the same category as the theatrical cases hereinbefore cited, and that it should be governed by the rule laid down in those cases. The court is of a contrary opinion. These allegations are mere conclusions. No facts are set out to sustain them. It does not appear that defendant is acquainted with any special or secret processes or gifted with any special or unusual dexterity. The facts alleged are that he is a skillful and expert leather worker, thoroughly competent to act as foreman, and that he was employed at $18 a week. This does not place him in the category of a prima donna, a tragedienne or a premier danseuse.

The demurrer is sustained and the injunction dissolved.

---

[1] See the many cases cited in the note to 1 Ill. C. C. 86.—Ed.

NOTE.

The decision of Judge Dunne, while correct as applied to the facts in the case before the court, is clearly erroneous insofar as it holds that injunction will not lie to restrain an employee from breaking his contract of employment. Where the services of an employee are special, unique or extraordinary, injunction will lie to restrain such employee from working for others during the period of employment. The rule is not restricted to actors, singers, etc.

The authorities are fully reviewed in the note to *Oppenheimer et al. v. Sayer*, 1 Ill. C. C. 86. See also the decision of Judge Tuley in *Oppenheimer et al. v. Sayer*, 1 Ill. C. C. 74; *Jennings v. Bethel*, 27 Ohio C. C. 239.—Ed.