## JEFFERS v. RONDEAU.   (No. 11963.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 26, 1927.

**1. Mines and minerals ⊂⟹52—Injunction is not generally granted to enforce specific performance of contract to drill oil or gas well.**

An injunction is not generally held a proper remedy to enforce specific performance of a contract to drill oil and gas well.

**2. Injunction ⊂⟹16—Injunction will not lie where petition shows on its face that plaintiff has adequate remedy at law.**

An injunction will not lie where petition for injunction shows upon its face that plaintiff has an adequate remedy at law.

**3. Injunction ⊂⟹118(1)—Averments in petition for injunction must negative every inference of existence of facts warranting denial of relief.**

In petition for injunction, averments of material and essential elements must be sufficiently certain to negative every inference of existence of facts under which petitioner would not be entitled to relief.

**4. Mines and minerals ⊂⟹52—Oil lease owner held improperly granted injunction for specific performance of well-drilling contract on ground well had not been properly plugged (Rev. St. 1925, arts. 6005, 6012).**

Oil lease owner was improperly granted injunction for specific performance of well-drilling contract, where only ground shown by plaintiff

was that defendant had not finished well according to terms of contract, and that he failed to properly plug it as required by Rev. St. 1925, art. 6005, where there was no allegation that defendant was insolvent and would not be responsible in damages, under article 6012, for his failure to properly plug well.

Appeal from District Court, Denton County; Alvin C. Owsley, Judge.

Suit by Henry E. Rondeau against O. R. Jeffers and another, wherein plaintiff petitioned for an injunction. An injunction was granted, and, from the judgment overruling his motion to dismiss the injunction, defendant named appeals. Judgment reversed, injunction set aside, and cause remanded for further proceedings.

Allred & Allred and Ben P. Allred, all of Wichita Falls, for appellant.

Sullivan, Speer & Minor, of Denton, for appellee.

BUCK, J. Plaintiff below, H. E. Rondeau, hereinafter called plaintiff or appellee, filed suit in the district court of Denton county against O. R. Jeffers and M. A. Mathis. O. R. Jeffers appealed from the judgment and is hereinafter called defendant or appellant.

Appellee alleged: That O. R. Jeffers, on June 9, 1927, entered into a written contract with appellee, by the terms of which Jeffers obligated himself to drill an oil and gas well on certain land belonging to Mrs. Jessie T. Owens, in Denton county, upon which land appellee had a valid oil and gas lease. That appellant obligated himself to drill a well to the depth of 2,000 feet unless oil or gas should be found at a lesser depth, and further, unless the Ellenberger lime, or what is known as "big lime" or "granite," should be encountered at a lesser depth. That by the terms and conditions of said contract, the said O. R. Jeffers obligated himself to take cuttings of all formations encountered while drilling, and to test all likely sands, and to keep accurate records of the same, and at any time formations should be encountered which showed oil or gas, or which might produce oil or gas, same should be analyzed; and further obligated himself that he would "co-operate with plaintiff and consult with him about matters of importance in connection with the drilling of said well, and would keep plaintiff fully informed as to the progress of said well and the condition, kind, depth, and thickness of the formations encountered." That by the terms of said contract, the plaintiff would retain an undivided one-half interest in such well as should be produced and finished, and the remaining one-half should be the property of defendant, O. R. Jeffers. To that extent they were joint owners of any completed producing well, and that, as such joint owner, appellant was entitled to all information concerning the same which would prompt the defendant to abandon the same, or to declare it a nonproducing well.

He alleged: That Jeffers had failed and refused to furnish him a complete log of the well, showing the formations encountered, the character, depth, and thickness thereof, and had failed and refused to furnish him with the cores of those formations showing signs of oil and gas for the purpose of being analyzed. That he had failed to co-operate with plaintiff and to consult him about matters of importance in connection with the drilling of said well and to keep him informed of the progress of such drilling, and that he deceived appellee in failing and refusing to notify appellee that the well had been drilled to the proper depth, and to furnish him with a log or information as to the formations passed in the last portion of said well. That Jeffers had not personally been active in drilling the well, but that his agent and representative, fully authorized and empowered to act in such matters, to wit, M. A. Mathis, was at the time of the filing of the petition for injunction in the act of dismantling the machinery and equipment with which the appellant, Jeffers, obligated himself to drill said well to completion, and that defendants were threatening to remove all of said machinery from said location without the performance of said contract with plaintiff in the manner and conditions hereinabove set out, and without complying with the laws and rules of the state of Texas and the Railroad Commission of Texas, under whose supervision this contract and all other contracts of a similar nature are performed, and without plugging said well in the manner and under the conditions so prescribed by the Railroad Commission of Texas, and by the laws, rules, usages, and customs in such cases made and provided.

He prayed for restraining orders against Jeffers and Mathis, restraining them from removing, or causing to be removed, from the lease any part of the drilling equipment, "whether it be engines, boilers, pipes, lines, wrenches, pulleys, tanks, pumps, reservoirs, and equipment of every kind and character heretofore used or beneficial in the drilling of said well and carrying out said contract until such time as said well can be finished according to law and the terms and conditions of said contract."

The petition for injunction was submitted to the district court of Denton county, and the judge thereof entered the following order:

"Upon consideration of the foregoing petition, it is ordered that upon the execution of a bond in the sum of $500, payable and conditioned as the law provides, with two or more sureties thereto, to be approved by the clerk of the district court of Denton county, Tex., the said clerk will issue a writ of injunction restraining the defendants, and each of them, and any and

all persons acting for or under them as prayed for in the foregoing petition, until the further order of the court. Alvin C. Owsley, Judge of Sixteenth Judicial District of Texas."

A bond in the sum of $500 was given, and the writ was served upon M. A. Mathis. O. R. Jeffers filed a motion to dismiss the injunction, which motion was overruled, and O. R. Jeffers appeals.

## Opinion.

The contract of drilling between Rondeau and Jeffers provided, in part, as follows:

"Whereas, first party is the owner of certain oil and gas leases situated north of the city of Denton, in Denton county, Tex., including those covering lands hereinafter mentioned, and is desirous of having a well drilled in search for oil and gas, and second party is a drilling contractor and desires to drill said land for the consideration hereinafter set out.

"Now, second party hereby agrees to drill such well at a location on the south 47 acres of the west 80 acres out of the S. H. Lewis survey, and adjoining part of the A. Fry survey owned by Jessie T. Owens, situated about five miles north of the city of Denton, Denton county, Tex. Second party agrees to erect a suitable derrick for said drilling immediately, and actually to spud in said well with a rotary drilling rig on or before midnight of June 15, 1927, and to continue the drilling thereof with due diligence and in a good and workmanlike manner in a bona fide effort to complete said well as a producer of oil or gas in paying quantities until either:

"(1) Said well is completed as a producer in paying quantities; or

"(2) Said well has been drilled to a depth of 2,000 feet; or

"(3) Unless Ellenberger lime, or what is known as 'big lime' or 'granite,' has been encountered and definitely identified at a lesser depth than 2,000 feet.

"Second party agrees to take cuttings of all formations encountered in the course of drilling, and to test all likely sands, and to keep accurate records of same, the character, depth, and thickness thereof, and especially when any formation is encountered showing oil or gas and which likely might produce oil or gas, such formation shall be carefully cored, to the end that no oil or gas bearing formation shall be drilled through without carefully testing the same, and to the end that, if possible, said well shall be completed in a good and workmanlike manner as a producer of oil or gas in paying quantities.

"Second party agrees to co-operate with first party and consult with him about matters of importance in connection with the drilling of said well, and to keep first party fully informed as to the progress of said well, the condition, kind, depth, and thickness of formations encountered, etc., upon request of first party.

"In the event a formation is encountered showing oil or gas such as to warrant the setting of casing, then second party shall test such formation by setting casing and bailing.

"It is understood that second party shall complete the well, cased and bailed, being what is known as a 'turnkey job,' and in case of a dry hole, then all salvage and material furnished by him shall belong to the second party.

"As a consideration for so drilling said well, first party shall convey and assign to second party the following leases:"

—being certain leases and interest in leases in the vicinity of the Jessie T. Owens tract, and an undivided one-half interest in the lease covering the 47 acres of the Jessie T. Owens tract on which the well was to be drilled. It will be noted that the appellee, in his petition, did not allege definitely that appellant had not drilled the well to the required depth.

G. E. Allen, witness for defendant, testified that he was the night driller, and that they drilled the well to a depth of 2,004 feet, reaching that depth some time between midnight of August 17, 1927, and daylight of August 18th. Rondeau was at the well about 9 or 10 o'clock p. m. of August 17th, and in the forenoon of August 18th he went out to the well and found the drillers and employees dismantling the same. They told him that they had gone down to the required depth and found no oil or gas. Rondeau claims that when he was at the well the night before they told him they had 45 or 46 feet to drill in order to reach the 2,000 feet depth, and that they would not be able to finish it that night, as they were having trouble with the heavy gumbo encountered, and also with the failure of the engine to function properly. Mr. Allen testified that they did not tell plaintiff that they would not finish that night, but told him that they would probably not finish. Rondeau also testified that the log that was kept in the shanty, near the well, was 100 feet less than the true log kept by Mathis, but he seems to have known all about this and seems to have approved of so keeping the log, which would probably be accessible to the public, 100 feet less than the real depth, in order that other persons might not know how deep the well had gone.

It will be further noted that plaintiff below does not allege in his petition that any oil or gas producing sand had been encountered before the well was abandoned, or that he believed such was the case. Apparently the only complaint he made in his petition was that he had not been notified of the time when the well should be finished, in order that he might be present, and that the drillers had not given the Railroad Commission notice three days before the plugging of the well, and had not given such notice to available lease and property owners, as required by the rules of the Railroad Commission. Rule 10 of the Railroad Commission is as follows:

"(a) All abandoned or dry wells shall immediately be plugged according to the following rules:

"(b) *Manner of Plugging.*—All dry or aban-

doned wells must be plugged by confining all oil, gas, or water to the strata in which they occur by the use of mud-laden fluid filling well to the top as directed by the commission. In case of cable drilling, in addition to mud-laden fluid, cement and plugs may be used, and shall be used when so directed.

"(c) *Notice of Intention to Plug.*—Before plugging dry and abandoned wells, notice shall be given to the Railroad Commission of Texas or its conservative agent in the field, and to all available adjoining lease and property owners and representatives of such lease and property owners may, in addition to the oil and gas conservation agent of the commission, be present to witness the plugging of these wells if they so desire, but plugging shall not be delayed because of inability to deliver notices to adjoining lease or property owners."

G. E. Allen, for the defendant, testified: That they began to plug the well about 2:45 a. m. of August 18th. That they plugged it by pumping mud annd water out of the slush pit into it. That he had been in the drilling business since 1901, drilling with rotary rigs. That he plugged that well with mud just as he had plugged every well since he had learned to plug them, "ever since the Railroad Commission went into effect," meaning, evidently, ever since the Railroad Commission had been given supervision over the oil and gas drilling operations. There was some evidence in the way of testimony and affidavits introduced by plaintiff that the slush pit did not show, after the well was supposed to have been plugged, that any of the mud had been withdrawn from the slush pit, at least very little of it, if any.

Plaintiff did not allege in his petition that he desired the derrick and machinery connected with the drilling to remain on the lease for the purpose of operating the same himself in plugging the well or filling up the hole with mud and water. The only ground, apparently, that the plaintiff shows in his petition for asking for the injunction is to have "the well finished according to the terms of the contract." He alleges that, if the defendant be allowed to remove the machinery and equipment from the lease, the plaintiff would be deprived of having a complete performance of the terms of said contract; and that such action will implicate the plaintiff in the illegal and improper abandonment of said well, and subject him to penalties and criticisms at the hand of the Railroad Commission of Texas, and subject him to much annoying litigation at the hands of the fee owners of the adjoining lands. The evidence does not sustain the allegation that the Railroad Commission was threatening to take any action against plaintiff, or that his neighbors were threatening to sue him for damages or otherwise by reason of improper plugging. The evidence shows that there was a report made out by the drillers on August 21st, three days after the plugging of the well was claimed to have been done

by the defendant and his employees, and a copy of the same was filed with the Railroad Commission. There was no evidence tending to show that such report was not satisfactory to the Railroad Commission, or that any complaint was made by said commission by reason of the failure to give said commission three days' notice of the abandonment of the well as a nonproducer, and the purpose to plug it.

Article 6005, Rev. Civ. Statutes of 1925, under the head of "Abandonment Wells," provides: That when any owner or operator of a well determines to abandon it or cease operating the same, he shall securely fill up such well with rock, sediment, or with mortar, etc., in such manner as shall prevent the gas and oil from escaping therefrom. That if the owner or operator shall fail to efficiently comply with the provisions of this article, then the owner of the land upon which the well is situated shall forthwith comply therewith. If all the persons theretofore named shall fail to efficiently fill up the well in the manner described, then it shall be lawful for any person, after written demand therefor to any of said persons, to enter the premises where such well is situated, take possession thereof, and fully comply with the provisions of this article. The reasonable cost and expenses thereof shall forthwith be paid by the owner or operator of the well, and on his default by the owner of the land. The amount of such reasonable cost and expenses shall forthwith be a lien upon the fixtures and machinery and leasehold interest of the owner and operator of said well, as upon the title and interest of the landowner in the land upon which said well is located.

Article 6012, Rev. Civ. Statutes of 1925, provides that if any owner of a well shall neglect or refuse to cause said well to be plugged, or shut in, as theretofore provided, for a period of 20 days after a written notice to do so, it shall be lawful for the owner or operator of any adjacent or adjoining lands to enter upon the premises where said well is situated and cause the same to be plugged, if it be an abandoned well, or shut in, if not abandoned, pursuant to the provisions of the statutes. There is no allegation in the petition that Jeffers is insolvent, and would not be responsible in damages for any obligation.

[1] An injunction is not generally held a proper remedy to enforce specific performance of a contract to drill an oil or gas well. Summers, Oil and Gas, § 190, p. 627, says:

"Specific performance of a covenant to drill an oil and gas well, if there were no other reasons for its refusal, is too harsh a remedy to be freely used. Before the court makes such a decree, no one knows for a certainty that the well ordered to be drilled will be productive. The lessee is compelled by such decree to, spend thousands of dollars with only a chance of ever re-

covering it. The lessor is out nothing. Forfeiture is sometimes considered a harsh remedy, but it is mild as compared to specific performance in connection with oil and gas leases. In fact, no court has ever rendered an outright decree of specific performance of a covenant to drill an oil or gas well."

If the plaintiff had alleged that under the contract he was authorized to complete the well if defendant should not drill it to a stated depth, or to complete it according to the contract, and the defendant had failed and refused so to do, and that he desired to exercise his option of completing the well, and desired to do so with machinery furnished by the driller, or the other party, then an injunction was a proper remedy to prevent the removal of the machinery from the lease. S. W. Oil & Gas Co. v. Kimball Oil & Dev. Co. (Tex. Civ. App.) 224 S. W. 1111. But no such allegations were made. Pomeroy's Equity Jurisprudence, p. 1341, says:

"Injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance."

See Welty v. Jacobs, 171 Ill. 624, 49 N. E. 723, 40 L. R. A. 98; Metropolitan Exhibition Co. v. Ewing (C. C.) 42 F. 198, 7 L. R. A. 381; T. P. Oil Co. v. Barker (Tex. Civ. App.) 252 S. W. 810; Carrico v. Stevenson (Tex. Civ. App.) 135 S. W. 260; Lone Star Salt Co. v. Texas Short Line Ry. Co., 99 Tex. 434, 90 S. W. 863, 3 L. R. A. (N. S.) 828, by the Supreme Court, in which it is said, quoting from the headnote, "The mere fact that a decree for specific performance will require the constant superintendence by the court of the execution of a contract continuing through a long period of time is sufficient reason for denying the relief;" Texas Farm Bureau Cotton Ass'n v. Stovall, 248 S. W. 1109, by the Dallas Court of Civil Appeals. The judgment in this case was reversed by the Supreme Court (253 S. W. 1101), the Supreme Court holding that the right of a co-operative marketing association to compel specific performance of a member's contract to sell his cotton to it exclusively will not be denied, as requiring constant supervision of the court for a long period of time over a series of acts, and as possibly compelling the court to pursue the member from place to place, etc. The holding was based on the ground that the rule against the right to invoke an injunction for specific performance, etc., was a rule of decision, and not a limitation of jurisdiction of a court of equity; that a court of equity would not meet with any serious difficulty in requiring an owner to deliver his cotton after it was ginned.

[2-4] But inasmuch as an injunction will not lie where a petition for injunction shows upon its face that plaintiff has an adequate remedy at law, and in the absence of an allegation that the defendant is insolvent, we think the injunction should have been dissolved upon application, and that the failure to dissolve constituted error. See T. P. C. & O. Co. v. Barker (Tex. Civ. App.) 252 S. W. 810; Hill v. Brown (Tex. Com. App.) 237 S. W. 252; Terry v. Crosswy (Tex. Civ. App.) 264 S. W. 719; 3 Elliott on Contracts, p. 2422. In a petition for injunction, the averment of material and essential elements must be sufficiently certain to negative every inference of the existence of facts under which petitioner would not be entitled to relief. Gillis v. Rosenheimer, 64 Tex. 246; Birchfield v. Bourland, 187 S. W. 422, by this court; Emde v. Johnson (Tex. Civ. App.) 214 S. W. 575, writ of error refused.

For the reasons stated, we do not believe that the remedy of injunction was available to plaintiff below, under the allegations contained in his petition, and that the trial court committed error in refusing to dissolve the injunction theretofore granted. Hence the judgment of the trial court is reversed, and the temporary injunction heretofore granted is set aside, and the cause is remanded for further proceedings not inconsistent with this opinion.