ATLANTIC REFINING COMPANY *vs.* LOUIS E. BARNARD.

Hampden.     September 20, 1928. — October 8, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Contract*, Construction, Validity.     *Damages*, Liquidated.

A contract in writing between a wholesale dealer in gasoline and motor oils and a retail dealer provided for the installation of a complete equipment for retailing gasoline and motor oils, which was lent to the retail dealer; and also provided that, in case the retail dealer in any way "shall fail to keep or perform the terms and conditions of" the agreement, he "shall be construed and is hereby declared to be in default hereunder and the" wholesale dealer "may, at any time at its option . . . take immediate possession of the said system . . . and charge the" retail dealer with a certain sum "which, it is agreed, is the fair and reasonable cost of the installation and removal of the system and the cost of the improvements mentioned hereunder, or allow said system to remain and charge" him with a certain larger sum, "the agreed value of the system and improvements, and thereupon said sum charged shall immediately become due and payable by the" retail dealer "and upon the payment of the said sum title to said system and improvements is to pass from the" wholesale dealer to the retail dealer. Alleging breach of the agreement by the retail dealer, the wholesale dealer brought an action of contract for the larger sum. There was evidence of breaches of the contract by the defendant, and a contention that the contract was procured by fraud of the plaintiff was not made out. Upon exceptions by the defendant, after a finding by a judge for the plaintiff, it was *held*, that

(1) The contract was not so unreasonable that no man in his senses would enter into it;

(2) The provisions as to amounts to be paid in case of breach by the defendant were not in the nature of a penalty;

(3) The contract was valid and enforceable;

(4) The exceptions were overruled.

CONTRACT upon a contract in writing.   Writ dated July 22, 1926.

Provisions of the contract in writing, other than those quoted in the opinion were:

"That the party of the first part [the plaintiff], in consideration of the purchase of gasoline and motor oils at the first party's prevailing dealers prices, from it by the party of the second part [the defendant], for the period hereinafter set forth, hereby agrees to furnish and lend to the party of the second part for a period beginning on the day first above mentioned and continuing until the 10th day of April, 1930, a complete system for retailing gasoline and motor oils to the general public, the said system, for the purpose of this agreement, to include the following [the equipment here was specified]:

"The party of the first part further agrees to install said system and make the following improvements at its own cost and expense.

"Install cinder driveway topped with crushed stone.

"It is agreed that the system shall, at all times, remain the property of the party of the first part; and that it shall be operated and used along with the ground by the party of the second part, only for the purpose of handling gasoline and motor oils purchased from the party of the first part; and that at the expiration of this Agreement or any extension or prior termination thereof, said system shall be returned to the party of the first part, in good order and condition."

Acts or defaults of the defendant, other than those stated in the opinion, which, the contract provided, would be breaches of its provisions, were "if the party of the second part shall, at any time, cease to purchase all gasoline and motor oils handled thru the said system, from the party of the first part or fail to pay promptly for all gasoline and motor oils purchased, in accordance with terms of payment as specified from time to time by the party of the first part, or fail to purchase at least 75,000 gallons of gasoline and 2,000 gallons of motor oils yearly from said party of the first part, or use the said system for the handling of gasoline and motor oils purchased from any other party, or for any purpose other

than the handling of gasoline and motor oils purchased from the party of the first part, or cease to purchase gasoline and motor oils from the party of the first part, or attempt to move or remove the said system without the written permission of the party of the first part, or if any attachment, execution, distress for rent, or like process shall be issued against the party of the second part . . . ."

In the Superior Court, the action was heard by *Broadhurst*, J., without a jury. Material evidence is stated in the opinion. The judge found for the plaintiff in the sum of $2,509.16. The defendant alleged exceptions.

The case was submitted on briefs.

*W. A. Davenport & W. L. Davenport*, for the defendant.

*G. A. Bacon, N. P. Wells, & S. W. Weltman*, for the plaintiff.

SANDERSON, J. The parties entered into a written agreement by which the plaintiff was to install and lend to the defendant a complete equipment for retailing gasoline and motor oils. The plaintiff is seeking to recover the amount stipulated in the contract as the agreed purchase price of the system and improvements in case of breach of the agreement by the defendant. The breaches now relied upon are the discontinuance of the use of the products of the plaintiff, the removal of the equipment and the use of Standard Oil products on the premises. The questions, whether these breaches, in so far as they were disputed, occurred and whether they were justified by the conduct of the plaintiff, presented only questions of fact.

The terms of the contract fixing the amount to be recovered in case of default by the defendant, after providing for certain specific things which the defendant agreed to do, are as follows: "in the event of the party of the second part [the defendant] becoming financially embarrassed or involved, insolvent, or involved in bankruptcy, or any other way the said party of the second part shall fail to keep or perform the terms and conditions of this Agreement, then, and in such case, the said party of the second part shall be construed and is hereby declared to be in default hereunder and the party of the first part may, at any time at its option . . . take immediate possession of the said system . . . and charge the

party of the second part with the sum of fifteen hundred forty-four ($1,544.00) Dollars, which, it is agreed, is the fair and reasonable cost of the installation and removal of the system and the cost of the improvements mentioned hereunder, or allow said system to remain and charge the party of the second part with the sum of twenty-three hundred sixteen ($2,316.00) Dollars, the agreed value of the system and improvements, and thereupon said sum charged shall immediately become due and payable by the party of the second part, and upon the payment of the said sum title to said system and improvements is to pass from the party of the first part to the party of the second part." The finding for the plaintiff was evidently for the second sum and interest.

The contract makes no express provision for rescission or abandonment by the defendant, in case of material breach by the plaintiff, but the defendant's legal rights would be preserved in case of such breach, and it is apparent that one of the issues tried was whether the defendant was justified in refusing to go on with the contract because of breaches of the agreement by the plaintiff. The defendant used the equipment and bought and sold oil under the contract for several months and the only reason given at the time for abandoning the contract was that the plaintiff charged him the same price for gasoline as others were selling it for.

The defences that the contract was obtained by fraud and was unconscionable were not made out. As construed by us the contract was not so unreasonable that no man in his senses would enter into it. *Earl of Chesterfield* v. *Janssen,* 2 Ves. Sr. 125, 155. See *Hume* v. *United States,* 132 U. S. 406. The contention of the defendant is that the provisions of the contract for an agreed price or liquidated sum for the property in case of any breach of agreement by the defendant are in the nature of a penalty and void.

It did not appear that the agreed price was disproportionate to the damages which might be sustained by breach or was in excess of the value of the property to which the defendant was to gain title. The court said, in *Chase* v. *Allen,* 13 Gray, 42, 45: "If the contract consists of several stipulations, the damages for a breach of which cannot be well

ascertained and valued, then the parties are deemed to have intended that the sum agreed on shall be treated as liquidated damages, from which there is to be no deduction." The stipulations are directed toward one end and that is the continued use of the apparatus for the sale of the plaintiff's products. The violation of these provisions would seriously impair the rights of the plaintiff and damages for their breach might not be easy of ascertainment. See *Lynde* v. *Thompson,* 2 Allen, 456, 459.

There is no legal objection to parties agreeing in advance to the value of property loaned and that, upon the happening of a certain event in the control of the borrower, he will buy the property at the agreed price. When the parties have made such an agreement the amount to be paid for the property is not in the nature of a penalty and the parties are bound by the agreement in the absence of fraud. The sums agreed upon are valid provisions whether considered as liquidated damages or the price which the defendant was to pay for property in case of breach of contract by him. Exceptions not argued are treated as waived.

*Exceptions overruled.*