For plaintiff: J. C. O'Reilly, W. A. Gunning.

For defendant: F. A. Jones.

The Atlantic Refining Co.
vs.            Eq. No. 11332.
John Dudek

May 17, 1932.

BLODGETT, J. Heard upon bill, answer and proof.

The bill is brought to restrain the respondent from purchasing or distributing at said respondent's premises in Warren, Rhode Island, any gasoline, motor fuels, motor oils and greases unless purchased from complainant, in accordance with a certain agreement in writing entered into by both parties May 15, 1926.

The agreement appears upon the record marked Compl't's Ex. 2 and binds the parties thereto for a term of five years, and a further term of five years unless either party shall give written notice to the contrary, to the other party, sixty days prior to the termination of said first mentioned period.

Sixty days prior to May 14, 1931, the date of the determination of the first mentioned period, no written notice was given by either party to the other terminating said agreement. The brief of respondent on hearing of bill,

answer, replication and proof sets out four issues for decision.

1. Is the complainant equitably estopped from maintaining that the said agreement was renewed?

2. Has the complainant by its acquiescence treated the said agreement as terminated?

3. Is said agreement unenforceable in equity for lack of mutuality?

4. Is said agreement void at law and unenforceable in equity because of the uncertainty and inequality in its terms?

The doctrine of equitable estoppel is necessarily raised in a case like the present by reason of the fact that respondent has failed to comply with the terms of the agreement in giving complainant a notice in writing of the termination of the same sixty days before May 14, 1931.

In Pomeroy on Equity, 4th ed., Vol. 2, Sec. 802, p. 1635, the author says:

"Equitable estoppel in the modern sense arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel."

Pomeroy further states, p. 1671:

"It is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss."

Respondent had in his possession a copy of the agreement at least two years before the first period of determination of same. The condition as to termination of same could not be clearer than the printed clause as to sixty days' notice in writing required. If he carelessly or intentionally let the opportunity slip to do such a simple act as sending a written notice, he is bound to show some sufficient reason for such failure. It resolves itself then to a matter of the testimony upon this issue.

Complainant, under the agreement, fitted up a gasoline station for respondent. In January, 1931, respondent claims that his business was falling off. In February, 1931, respondent applied to the Warren Town Council for permission to install additional pumps and was granted such permission March 3, 1931, such pumps being the property of the Goodrich Oil Co., a competitor of the complainant.

The contract with complainant would expire May 14, 1931, provided respondent gave the required written notice to complainant. As respondent was distributing the product of a rival company, contrary to the provisions of his agreement, at a period shortly prior to the time when he could have easily terminated the agreement with complainant, it would seem to the Court that it became his duty to carefully follow the terms of the agreement, and avoid any dispute as to the termination of the agreement.

In order to evoke the doctrine of equitable estoppel, respondent testified to a meeting between himself and agents of complainant on March 12, 1931, at which meeting the agents of complainant represented to him (respondent) that if he would continue to do business with complainant, complainant would install electric pumps, a sign and a hydraulic lift free of charge; that this proposition was agreeable to him (respondent), and that, relying upon said promises, he

gave up his intention to terminate the contract.

Agents of the complainant explicitly deny any meeting on March 12, 1931, and the making at any time of such promises.

Respondent and two representatives of complainant were present at this alleged meeting. Respondent produces a memorandum (Respdt's Ex. B) made upon a detached page of a note book, with the words in pencil thereon: "March 12, 1931, Richards offered lift," in support of his contention that such a meeting took place on March 12, 1931. Respondent claims his wife, who in the afternoon of that day returned from a shopping tour in Providence, made this memorandum upon his dictation.

Complainant's witnesses produce daily reports made by one Locke, one of the agents of complainant alleged to have been present at the meeting of March 12, 1931, dated March 11 and 12, 1931, which it is claimed designated where said Locke was on said dates (Complt's Ex. 1), which said reports contain no mention of a meeting with respondent on either date. Complainant further produces a daily report of March 24, 1931, which mentions a call on that date upon respondent. Complainant further claims that any talk between said agents and respondent took place on March 24, 1931, and such agents testify no representations were made such as claimed by respondent at that time (viz.: March 24, 1931). Complainant produces a copy of a letter sent to one C. H. Morehouse, the general manager for the district in which the station of respondent was located (Complt's Ex. 4), which requests authority by one Richards, one of the agents alleged to have been present on March 12, 1931, to furnish electric pumps to respondent, but puts the "lift" in abeyance.

The Court finds that under the testimony respondent has failed by the preponderance of the evidence to es-tablish any meeting with the agents of complainant on March 12, 1931, and that such meeting did not take place, and, further, the acts of the parties under the testimony fail to establish the making of any such representations as claimed by respondent, and that the doctrine of equitable estoppel does not apply.

(2) Has the complainant by its acquiescence treated the contract as terminated?

The testimony shows that in April the general manager of complainant in New England approved the installation of two electric pumps and a sign. This would seem to show that the manager had in contemplation a five-year extension from May 14, 1931. In fact, in the mind of the Court, no testimony points to any acquiescence on the part of those in authority in complainant corporation to a termination of the contract.

(3) Is said agreement unenforceable in equity for lack of mutuality?

Stress is laid in brief of respondent upon the lack of mutuality in the agreement in that the respondent is required to purchase from complainant while there is no provision in the agreement requiring complainant to sell.

Under the terms of the agreement in consideration of respondent's agreement to purchase, complainant agrees to lend respondent a complete system for retailing gasoline, &c., and specifies what this system consists of.

It can readily be seen that any purchase by respondent is based upon the credit extended to respondent. If the agreement contained a provision on the part of complainant to sell, it is easy to foresee complications. The complainant could not be compelled to sell unless respondent paid or unless complainant extended credit to respondent. Should complainant unreasonably refuse to sell and deliver gasoline, &c., the respondent would have a clear legal remedy.

The Court can find no lack of mutuality in such provision of the agreement. The execution of the agreement by respondent binds him to its terms barring fraud or misrepresentation on part of complainant in the making of the agreement.

The Court is of the opinion the agreement is not invalid for lack of mutuality.

(4) Is said agreement void at law and unenforceable in equity because of the uncertainty and inequality in its terms?

Respondent draws attention to that clause in the agreement that requires the purchase of 30,000 gallons of gasoline or motor fuels and 1,500 gallons of motor oil yearly, and that on failure on the part of respondent to do this the respondent is held in default, and the equipment may be removed and respondent compelled to pay $1,270, or that the equipment may remain and respondent pay complainant $1,905. The clause is clear enough and readily understandable and was accepted by respondent when he signed the agreement.

The legality of this clause was recently upheld by the Massachusetts Supreme Court in an action brought by this complainant to recover the amount specified, in a contract similar to the present agreement, by reason of a default.

*The Atlantic Refining Co.* vs. *Louis Bernon,* 163 N. E. 167.

As to the payments to be made by respondent, the agreement is equally clear. The contract reads: "at the party of the first part's following specified prices, prevailing in the town or city in which said land is located: 'All gasoline and motor fuels at tank wagon prices to dealers, all motor oils and greases *as per* schedule of prices to dealers.'"

That is to say, respondent agrees to purchase at the price prevailing in the Town of Warren.

Any construction of a contract must be reasonable. The words "prevailing in the town * * * in which the land is located," in such a case as the present where at the time of making the agreement the respondent was the only person selling the product of complainant, must mean that the price is fixed by the price prevailing in a similar location.

In the case of *Metropolitan Exhibition Co.* vs. *Ewing,* 42 Fed. 198, cited by respondent, the Court says, in relation to the contract involved:

"It must be one in which there are mutual promises, or which is founded on a sufficient consideration. It must be one the terms of which are certain, and in respect to which the minds of the parties have distinctly met, so there can be no misunderstanding of their rights and obligations."

In *Weston Paper Mfg. Co.* vs. *Downing Box Co.,* 293 Fed. 725, the price at which certain strawboard was to be delivered, under a contract, same to be delivered in monthly installments throughout a year, was to be fixed by the seller for each three months' deliveries in advance, and further it was provided that such price "shall be the seller's price then existing." This was held by the Court to be too indefinite to constitute a valid contract enforceable against the buyer.

This case is clearly not in point as to the provision in the present case as to price of the product.

In *Brooks* vs. *Federal Surety Co.,* 24 Fed. (2d) 884, cited by respondent, a contract for the sale of coal, which provided that the price should be the price at which the buyer would sell it less ten per cent., was held unenforceable, as the seller had nothing to do in fixing the price.

In *The Atlantic Refining Co.* vs. *Sheffers,* Eq. No. 6929, (R. I. Superior Court), Justice Barrows in his rescript,

in overruling a demurrer filed in a bill similar to the present bill, says:

"The only thing the parties as business men were seeking was performance. They never contemplated the alternative of damage for non-performance, and the law ought, if it can, to see that the intention of the parties is carried out."

It will be noted that in the present case there is no testimony that the price charged for gasoline, &c., delivered by complainant was not in accordance with the agreement, or that the agreement had not been carried out in accordance with its terms, but simply that no agreement was in existence at the time of the hearing.

The Court is of the opinion that the agreement was in force at the time of the hearing, that the same is a valid agreement, and the complainant is entitled to the relief prayed for.

For complainant: Comstock & Canning.

For respondent: Gardner, Moss & Haslam.